IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH DOUGHERTY, et al.,                    :

    Plaintiffs                          :

    vs.                                 :       CIVIL NO. 1:CV-10-1071

                                        :       **FILED**
JONATHAN SNYDER, et al.,                    :       **HARRISBURG, PA**

    Defendants                          :       JAN 2 5 2011

                                                MARY E. D'ANDREA, CLERK
*MEMORANDUM*                                Per _____
                                                Deputy Clerk

I.  *Introduction*

    The pro se Plaintiff, Keith Dougherty, filed this 42 U.S.C. § 1983 civil rights action arising from the issuance of a building permit for improvements to be made to a residence located in North Hopewell Township, with the anticipation of selling the house at a profit. The improvements were begun but never completed. Plaintiff traces the situation to the actions of the Township and its agents as Plaintiff invoked rights under the Pennsylvania Construction Code Act ("PCCA"), 35 Pa. Stat. Ann. § 7210.101-7210.1103 (West 2003), in an attempt to get construction of the improvements back on track. He also complains about rulings made by the state courts in actions he filed, in part, to remedy the alleged violations of the PCCA on the part of the Township and its agents. Federal constitutional claims are made for violations of procedural due process, substantive due process, equal protection, and the takings clause of the Fifth Amendment. State-law claims are also made for violations of the Pennsylvania Constitution and Pennsylvania common law, but Plaintiff does not allege the state constitutional provisions violated or the common law actions invoked.

Plaintiff is the sole member of the limited liability company that had contracted to make the improvements to the property. The defendants are: North Hopewell Township; Dustin Grove, William Bollinger, and Robert Barclay, the members of the Township Board of Supervisors; Kerrie Ebaugh, the Township Secretary/Treasurer; Jonathan Snyder, the Township's Building Construction Officer at the relevant time; Stephen Linebaugh, Judge of the York County Court of Common Pleas; Pamela Lee, the court's Prothonotary; J. Robert Chuk, District Court Administrator for the court; and John Doe members of the Pennsylvania Commonwealth Court, "as authors of per curiam opinions 553 CD 2007, 317 MD 2008,[1] 1450 CD 2008, 629 CD 2009, and 1200 CD 2009." All of the individual defendants have been sued in their individual and official capacities. Plaintiff has also sued "unnamed insurance carriers."

We are considering the following motions to dismiss under Fed. R. Civ. P. 12(b)(6): (1) Jonathan Snyder's motion; (2) Pamela Lee's motion; (3) the motion of Judge Linebaugh, Chuk, and the John Doe commonwealth court judges; and (4) the motion of North Hopewell Township, its supervisors and its Secretary/Treasurer.

II. *Standard of Review*

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." On a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted).

---

[1]     In the caption of his complaint and sometimes in the body of the complaint, Plaintiff refers to 317 MD 2007 but the docket number is actually 317 MD 2008.

2

A complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d. 929 (2007). Detailed factual allegations are not required, *id.* at 555, 127 S.Ct. at 1964, but the "'plausibility standard' . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965)). "[M]ore than labels and conclusions" are necessary. *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65. "[A]llegations that are merely consistent with liability are insufficient to state a claim for relief that is plausible on its face . . ." *Laffey v. Plousis*, 364 F. App'x 791, 794 (3d Cir. 2010) (nonprecedential) (quoting *Iqbal*, 129 S.Ct. at 1949)(internal quotation marks omitted).[2]

Additionally, when a plaintiff, as here, alleges a conspiracy, he "must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[C]onclusory allegations that there was 'a corrupt conspiracy,' 'an agreement,' or 'an understanding in place'" are not sufficient. *Id.* The winning party in a lawsuit does not automatically become a co-conspirator with the judge simply because he won. *Id.*

The court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, matters of public record, and indisputably authentic documents. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006). This includes court filings. *See Churchill v. Star Enterprises*, 183 F.3d 184, 190 n.5 (3d Cir. 1999)(citing *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). *See also Parks v. Twp. of Portage*, 385 F.

---

[2]    In *Twombly*, the Supreme Court stated that the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), no longer has a place in resolving Rule 12(b)(6) motions. 550 U.S. at 562-63, 127 S.Ct. at 1969.

App'x 118, 120 (3d Cir. 2010)(per curiam) (nonprecedential) (on a motion to dismiss for lack of jurisdiction the court would take judicial notice of publicly available state-court opinions). When the allegations of the complaint differ from the documents attached to the complaint, the documents control, and the allegations of the complaint need not be accepted. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994); *Goldenberg v. Indel, Inc.*, __ F. Supp. 2d __, __, 2010 WL 3732974, at *2 (D.N.J. 2010).

Finally, while "pro se complaints are 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers,'" *Jackson v. Div. of Developmental Disabilities*, 2010 WL 3636748, at *2 n.3 (3d Cir. 2010)(per curiam)(nonprecedential)(quoted case omitted), a pro se complaint must still "contain allegations permitting 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoted case omitted).

With these principles in mind, we provide the background to this case, as Plaintiff alleges it.

III. *Background*

Plaintiff alleges that Melanie Brady and Jean L. Brady were the deed holders on the property, (doc. 1 Compl. ¶ 74), although Kenneth Brady and Melanie Brady, formerly husband and wife, had lived there during their marriage. (*Id.* ¶ 73). Plaintiff is the sole member of Docson Consulting LLC. (*Id.* ¶ 17). On July 29, 2006, Docson Consulting entered into a "Realty Improvement Investment Agreement" with Jean L. Brady to make improvements to the property with the goal of quickly selling it. (Compl., Ex. 1). Docson Consulting was responsible for all design plans and all funding for permits and improvements. (*Id.*) The costs of fees and improvements were to "be added to the current mortgages" and then the excess (presumably the profit) was to be split at the time of sale 50-50 between Docson Consulting and the owners. (*Id.*). Plaintiff

4

Dougherty was to provide supervision and inspection "for a fee of $3,100 (to include [a] QEAA as necessary)." (*Id.*).[3] The agreement was signed by Keith Dougherty for Docson Consulting LLC and by Kenneth Brady for CUC Towson Inc. Jean Brady, Owner. (*Id.*). Melanie Brady was compensated for waiving all claims to the property. (Compl. ¶ 75).

On August 17, 2006, Kenneth Brady applied for the building permit. (*Id.* ¶ 19). On October 4, 2006, the permit was issued. (*Id.* ¶ 21). Docson Consulting made payment of $1,131.50 for the fees, (*id.*), and then an additional fee of $438.90, allegedly illegally imposed when Snyder "unlawfully add[ed] additional inspections" after he found out there was an "additional payor." (*Id.* ¶ 22).

Although the permit showed that it was issued to Kenneth Brady as owner of the property, (Compl. Ex. 2), Plaintiff alleges that the permit "is valuable personal property owned by Docson Consulting LLC." (Compl. ¶ 24).

About May 2007, Snyder had his son inform Kenneth Brady of a stop work order "based on a suspicion and without inspection." (*Id.* ¶ 29). Plaintiff sought clarification and Snyder told him he had "forg[otten]" that the permit involved a second-story addition of three bedrooms and a bath. (*Id.* ¶ 30). This addition would "chang[e] the load bearing walls from East and West to North and South." (*Id.*).

At some point, work resumed after Snyder had familiarized himself with the "engineered lumber" being used. In late May 2007, Snyder required three changes: (1) "bolt the first floor addition to the new garage with ½ carriage bolts"; (2) "replace the

---

[3]     A "QEAA" is a qualified exchange accommodation arrangement, a way under federal tax law, see 26 U.S.C. § 1031, to defer capital gains when business property is sold and the proceeds used to acquire another business property. Plaintiff Dougherty was contracted to be the "EAT," the exchange accommodation title holder, who would hold the property during the time the necessary transactions took place. The business property to be purchased was a fast-food franchise in Bel Air, Maryland, to be owned by CUC of MD, Inc, of which Kenneth Brady was president and Jean L. Brady the owner. (Compl. ¶¶ 17 and 18). Time was of the essence, and Plaintiff alleges that "net present value of cash flows" for the franchise at the time of Defendants' allegedly wrongful conduct was about $600,000. (*Id.* ¶ 17).

second story bedroom windows to meet the newer egress requirements"; and (3) "cut footings into the basement floor 3'X 3' 12" thick using ½ rebar." (*Id.* ¶¶ 44-47).

On June 15, 2007, Plaintiff advised they were ready for inspection, but Snyder refused to perform the inspection, with no written explanation, only "an inference to a Septic System permit." (*Id.* ¶¶ 49-50). On no fewer than five occasions, Snyder scheduled inspections and then simply refused to show without comment. (*Id.* ¶ 55).

On October 12, 2007, Plaintiff hand-delivered a written request for extension of the building permit. (Id. ¶ 56). On October 31, 2007, the "SEO" issued a septic system permit to accommodate the bedroom addition, and on November 1, 2007, Plaintiff visited Snyder's office, hand-delivered the septic permit, and asked about the status of the extension request. (*Id.* ¶¶ 57 and 58). The person in the office said it was still under review. (*Id.* ¶ 59). The Township's Secretary/Treasurer, Ebaugh, then "knowingly and improperly advised" Plaintiff that such appeals and requests go to the "Governing Board."[4] (*Id.* ¶¶ 61 and 62).

Plaintiff was heard at the Supervisors' meeting on November 5, 2007. (*Id.* ¶ 63). He alleges that Snyder lied at the meeting concerning his knowledge of the extent of the improvements intended for the property and about his refusal to perform inspections. (*Id.* ¶¶ 64-65). The Supervisors disposed of the extension request at that time by deciding that only Kenneth Brady, the building permit holder, could apply for an extension, even though Kenneth Brady was not a deed holder and had not paid for the permit. (*Id.* ¶ 67). Plaintiff alleges Snyder and the Supervisors "join[ed] in a conspiracy" to violate his procedural due process rights so that they could avoid financial liability

---

[4] When Plaintiff refers to the "Governing Board," he means the Township's Board of Supervisors. Under the PCCA, for those municipalities that choose to create a "board of appeals," appeals are supposed to go to that board, and no member "of the municipality's governing body" is allowed to serve on that board. *See* 35 Pa. Stat. Ann. § 7210.501(c)(1); 34 Pa. Code §§ 403.121-122.

(presumably for their mishandling of the permit process) and so that they could "extort[ ] bribes" and collect "fees a second time," (*id.* ¶ 66), by requiring another permit application. "The Township is part of a conspiracy to collect fines and fees without providing a hearing before a construction appeals board." (*Id.* ¶ 131).[5]

Docson Consulting had paid all fees and costs under the agreement to improve the property, and profit of $100,000 had been anticipated. (*Id.* ¶ 70). Snyder's and the Supervisors' actions resulted in a taking of this investment asset. (*Id.*).

As a result of progress being halted, "Kenneth Brady lost his only means of earning a living (working as a subcontractor on the project in question)." (*Id.* ¶ 80). He "fell behind on his truck payments and child support payments" as Plaintiff attempted to move the project forward. (*Id.* ¶ 81). In September 2007, he "was incarcerated for unpaid child support" and soon thereafter "lost his truck to repossession." (*Id.* ¶¶ 82 and 83).

Despite having disclaimed any interest in the property, Melanie Brady, Kenneth Brady's former wife, had second thoughts after seeing the changes in the property and sued Jean L. Brady to partition it, doing so without joining Docson Consulting as a necessary party and "conspir[ing]" with Snyder to prevent any further progress. (*Id.* ¶¶ 78 and 84).

On or about November 16, 2007, Plaintiff filed a mandamus action against Snyder in the Pennsylvania Commonwealth Court under Number 553 MD 2007. (*Id.* ¶ 86). On November 19, 2007, Plaintiff "hand deliver[ed]" the complaint to Snyder. (*Id.* ¶ 88). In the action, Plaintiff requested a writ of mandamus directing Snyder to declare the building permit was still valid. (Doc. 15-4, Supp'n Br. of judicial defendants, per curiam

---

⁵    Plaintiff also alleges that "the Defendants have established a pattern and practice . . . whereby 'outsiders' are thwarted in their efforts to obtain building permits, use the building permits obtained and complete in an orderly fashion contracts intended to produce income in the lawful pursuit of happiness." (Compl. ¶ 2).

opinion of the commonwealth court, CM/ECF p. 6).[6]  On November 20, 2007, the commonwealth court, deciding it lacked jurisdiction, sua sponte transferred the action to the York County Common Pleas court.  (Compl. ¶ 87; 553 MD 2007 docket; doc. 18, CM/ECF p. 46).  The latter court, by way of Judge Linebaugh, dismissed the action for lack of service on Snyder.  Plaintiff alleges the dismissal violated the First Amendment and Pennsylvania Supreme Court rules on service.  (Compl. ¶ 98).[7]

On November 21, 2007, Snyder issued a stop work order, in alleged ignorance of an automatic stay.  The stop work order set forth numerous violations of the PCCA and Pennsylvania regulations enforcing the act.  Included in the stop work order was notification that Snyder intended to charge North Hopewell Township for his time spent in defending against litigation.  (Id. ¶ 89 and Ex. 3).

On December 4, 2007, the Supervisors held a meeting at which the extension of time for the permit was again considered.[8]  At the meeting, the Township solicitor and his partner "retired to a back office" with the Supervisors to decide on the extension request.  The Township solicitor, in knowing violation of the PCCA, told Plaintiff all he had to do was apply for a second permit, even though he knew that appeals could not be heard by the Board of Supervisors and that extensions are automatically granted if the request is pending for more than thirty days, "(constituting a conspiracy to void due process and punish the plaintiff for demanding inspections)."  (Compl. ¶¶ 90-93).

---

[6]  The page number refers to the page number assigned by the Case Management/Electronic Case Files (CM/ECF) system.

[7]  Plaintiff also alleges Judge Linebaugh "was the judge in the Brady child custody arrangement where an onerous potential burden led to the desired outcome (failure to remain current)." (Id. ¶ 85).

[8]  Plaintiff Keith Dougherty "posted $3,000" so that Kenneth Brady could attend this meeting. (Id. ¶ 90).

Snyder, the solicitor, Supervisors, and Secretary/Treasurer, in violation of procedural due process, declared the permit expired, without any hearing, cross-examination of witness, presentation of evidence, or written explanation of the decision. (*Id.* ¶ 97).

In about April 2008,[9] Plaintiff filed a complaint with the Pennsylvania Department of Labor and Industry about the actions of Snyder and the Supervisors concerning the building permit. (*Id.* ¶ 99).[10] As a result, in June 2008, Michael G. Gensemer, the Chief of the Department's U.C.C. Inspection Division, found fault with Snyder's handling of the permit application and placed a warning letter in his certification file. In doing so, Gensemer criticized Snyder's failure to require "construction documents," observing that the submission of construction documents may be waived "**only** when the nature of the construction does not require review of construction documents to determine compliance with the Uniform Construction Code." (Doc. 1-3, Compl., Ex. 5, CM/ECF p. 15)(emphasis in the exhibit).[11] In July 2008, responding to a June 2008 letter from Plaintiff about North Hopewell Township, Gensemer wrote that the Department does not investigate municipalities and does not have jurisdiction over criminal matters such as Plaintiff's charge of extortion. He added that North Hopewell Township had a new building code officer. (*Id.*, Ex. 6, CM/ECF p. 16).

---

[9] Plaintiff alleges April 2007 but, given the time frame, it must be 2008.

[10] Under the PCCA, the Department is obligated, among other things, to investigate municipalities and construction code officials concerning enforcement and administration of the act. See 35 Pa. Con. St. Ann. § 7210.105(a)(1). The Department enforces the PCCA "except for residential buildings and utility and miscellaneous use structures in municipalities that have not adopted an ordinance to enforce the act under section 501(a)(1) of the act (35 P.S. § 7210.501(a)(1))." 34 Pa. Code § 403.141 (c).

[11] Gensemer's criticism of Snyder included the observation that "[d]ocuments submitted for this project included a set of plans, which lack scaled floor plans, lack any indication that bearing walls and columns were being moved, and that new engineered joists were being installed." (*Id.*, Ex. 5, CM/CF p. 14).

In the meantime, on June 12, 2008, Plaintiff filed a mandamus action against Gensemer in the commonwealth court, docketed at 317 MD 2008, apparently to compel him to investigate the Township. (Compl. ¶ 111; commonwealth court docket sheet). On January 12, 2009, the "corrupt Commonwealth court" dismissed the action for failure to join the Township as an indispensable party. (Id. ¶ 112). Plaintiff alleges this violated equal protection. (Id. ¶¶ 112-13). He also alleges that the ruling was irrational as the Township had no right to be part of a lawsuit attempting to compel an investigation of the Township. (Id. ¶ 112).

After the mandamus action against Snyder had been remanded to the common pleas court, Plaintiff attempted to enter a default against him. According to Plaintiff, the default had actually been entered on the docket but then "expunged" by defendant, Pamela Lee, the York County Prothonotary. (Id. ¶¶ 119 and 120). Plaintiff alleges that this was done "in secret without an order" and at the direction of the court. (Id. ¶ 162).

On September 2, 2008, Plaintiff filed a mandamus action against Lee in common pleas court, docketed at 2008-SU-4344-08,[12] to compel her to at least enter the attempt at default on the docket so he could appeal the Prothonotary's unlawful act, unlawful in Plaintiff's view because the government (meaning Snyder) is not a person entitled to due process so judgment can be entered against it at anytime under state rules. (Id. ¶ 121).[13] The defendant Court Administrator, J. Robert Chuk, assigned the case to Judge Linebaugh. (Id. ¶ 122). Plaintiff alleges that this "conspiracy" violated

---

[12]   We note that in his mandamus action, Plaintiff avers that the default was refused by Lee, rather than entered and then removed from the docket. (Doc. 7-2, CM/ECF pp. 3-4). Plaintiff seems to equate a refusal to accept a document for filing with an expungement of that document.

[13]   Exhibit 8 to the complaint is Lee's letter to Plaintiff explaining why she would not enter default. It was because Plaintiff had not first entered a return of service. She also recommended that he consult an attorney. (Doc. 1-3, CM/ECF p. 18).

procedural due process because Judge Linebaugh was not a neutral arbitrator as evidenced by his ruling on service of process in the mandamus action against Snyder that originated in the Pennsylvania Commonwealth Court under Number 553 MD 2007. Judge Linebaugh also could not be neutral because his judicial conduct was exposing him to liability for damages. (*Id.* ¶¶ 122-23).[14]

Plaintiff alleges that Pennsylvania courts will not recognize an "inverse condemnation" cause of action. Additionally, in violation of the First Amendment, the courts will require service by the sheriff as the only valid method of service for a case challenging a governmental determination, citing York County Local Rule 6017 and Pa. R. App. P. 1514. (*Id.* ¶¶ 124-25). Plaintiff specifically challenges the result in *Dougherty v. Snyder*, No. 1450 CD 2008 (Commw. Ct.), where the commonwealth court allegedly refused to entertain Plaintiff's claim of default on the basis that it had not been properly raised in the trial court. (*Id.* ¶ 125, Ex. 9, CM/ECF p. 28).

On March 26, 2009, Plaintiff filed a mandamus complaint in the common pleas court in the original mandamus proceedings against Snyder. (York County, 2007-SU-5136-Y08). The common pleas court dismissed the action because Plaintiff had failed to file an amended complaint as initially directed and instead, standing on his complaint, had taken the appeal docketed at 1450 CD 2008. Plaintiff appealed this decision. In affirming the lower court, the Commonwealth court, in 1200 CD 2009, imposed attorney's fees as a sanction. (doc. 15-4, CM/ECF p. 21). Plaintiff alleges that these fees were improperly "assessed for demanding due process." (Compl. ¶ 127).

After Snyder issued the November 21, 2007, stop work order, Docson Consulting issued a check in the amount of $1,549.17, dated November 28, 2007,

---

[14]    But Plaintiff here refers to Commonwealth Court number 1450 CD 2008, which also dealt with an aspect of the same mandamus action against Snyder.

11

(Compl., Ex. 4, CM/ECF p. 13), to cover what was technically a fee for the stop work order, (id., CM/ECF p. 6), but which Plaintiff calls a "fine." The Township deposited this check on May 20, 2008, when Plaintiff "attempted to file an amended caption." (Compl. ¶ 128). Plaintiff alleges it violates the PCCA to impose fines as the first step in any enforcement proceeding. (Id. ¶ 129). He also alleges defendant Kerrie Ebaugh, the Secretary/Treasurer, cashed the check in retaliation for Plaintiff's filing an amended complaint on May 14, 2008, in the original mandamus action, which added the Board of Supervisors as defendants, (id. ¶ 192), this complaint being the subject of the appeal in No. 1450 CD 2008. See Doc. 15-4, CM/ECF p. 9.

In Count I, asserting irreparable injury, Plaintiff seeks permanent injunctive relief against all the defendants, some of which is really a claim for damages. The relief sought is: (1) a prohibition on any hearings for costs and fees based on Plaintiff's demanding his right to procedural due process; (2) a refund of the "fines" imposed by the November 21, 2007, stop work order; (3) an extension of time on the building permit; (4) payment from the defendants of $600,000 plus interest, the alleged value of the lost fast-food franchise because Plaintiff could not take advantage of the section 1031 exchange; (5) other damages in the amount of $654,011.74; and (6) treble damages "as the corrupt conspiracy has been at the direction of the insurance carriers acting in bad faith." (Compl., p. 26).[15]

In Count II, Plaintiff asserts a substantive due process claim against all the defendants. Plaintiff alleges he has a liberty interest in contracting to purchase and improve real estate within the terms that are agreeable to the plaintiff and his investors. (Compl. ¶ 143). Plaintiff alleges he has "property interests in the papers and real

---

[15]    The unnamed insurance carriers are mentioned only in this prayer for relief and the prayer for relief in count VI.

property and the proceeds from his and their combined labor." (Id.). He avers the defendants have acted "fraudulent[ly]" and "dishonest[ly] specifically to interfere with plaintiff's interests in working on current and future profitable projects." (Id. ¶ 144). Defendants have acted unlawfully in fining Plaintiff for attempting to force a hearing on the request for extension of time, and Plaintiff is "now being prosecuted by the same unlawful lower court for appealing" that due process violation. (Id. ¶ 146). Plaintiff seeks the following injunctive relief on this count: (1) prohibit North Hopewell Township from listing itself as an "opt in" township until it has passed an ordinance in accord with the procedures of the PCCA; (2) prohibit the Township from declaring permits expired after twelve months; and (3) prohibit the Township's Board of Supervisors from hearing appeals involving the PCCA. (Compl., p. 28).

In Count III, Plaintiff asserts a procedural due process claim against all the defendants based upon the alleged violations of the PCCA and the alleged errors by the state courts, which supposedly exhibit a lack of impartiality by decision-makers, judicial and otherwise. In regard to the state courts, Plaintiff alleges that the courts of common pleas "act as an extended defense firm" so that when a default occurs, as it did in Plaintiff's case, the Prothonotary expunges it from the record and the Court Administrator ignores due process and assigns Plaintiff's cases to Judge Linebaugh, "the subject of a Judicial Conduct complaint" who "has pecuniary interest in the outcome." (Compl. ¶ 8). Plaintiff alleges the commonwealth court "in its appellate review will establish a pattern of violating both due process and equal protection" by denying pro se litigants procedural due process while protecting government agencies from default and protecting counseled litigants as well. (Compl. ¶ 9). Plaintiff alleges that the commonwealth court "is part of a corrupt mechanism to interfere with private property interests and the PCCA serves as cover for this corruption." (Compl. ¶ 132). Plaintiff attacks the rulings of the

commonwealth court and Judge Linebaugh and the actions of Lee and Chuk as "conscience shocking." (Id. ¶¶ 161-169). In Count III, Plaintiff seeks the following relief: (1) a declaration that the enforcement of the PCCA by the courts and the Department of Labor and Industry violates the Fifth and Fourteenth Amendments; (2) an injunction against the Commonwealth's collection of fees until proper due process procedures are established. (Compl., p. 32).

In Count IV, Plaintiff asserts a procedural due process claim against all the defendants based upon the commonwealth court's ruling in *Dougherty v. Snyder*, No. 1200 CD 2009 (Pa. Commw. Ct. Jan. 29, 2010), that Snyder, the defendant in that action, was entitled to attorney's fees under Pa. R. App. P. 2744 for filing a frivolous appeal and remanding to common pleas to set the amount. (Doc. 15-4, CM/ECF pp. 20-21). He alleges he was being punished for seeking due process. (Id., ¶ 180). Plaintiff requests the following injunctive relief: (1) prohibit the defendants from holding a hearing to assess the amount of the fees; (2) prohibit the defendants from requiring a second permit application as the first one is still valid; (3) require the refund of the "fines" paid as a result of the November 21, 2007, stop work order. (Compl., p. 33).

In Count V, Plaintiff asserts an equal protection claim against all the defendants, alleging that pro se litigants do not have the same procedural due process rights as counseled litigants, citing 42 Pa. Cons. St. Ann § 708 (West 2004). Plaintiff seeks the following declaratory relief: (1) Section 708 is consistent with the First, Fifth and Fourteenth Amendments; (2) a person suing over "a governmental determination" has the right of "personal service"; (3) governments and their agents are not "persons" and thus are not entitled to invoke the normal rules of service, and in lawsuits against them a plaintiff is entitled to a hearing on the "fact of service" rather than general denials. (Compl., p. 34).

14

In Count VI, Plaintiff asserts a claim for inverse condemnation against all the defendants, but the focus is on the conduct of Snyder, the Township Supervisors and Ebaugh, the Township Secretary. Plaintiff alleges that Snyder's stop work order effectively denied all use of the property by preventing a certificate of occupancy from being valid. (Compl. ¶ 194). And when Ebaugh cashed the Docson Consulting check, it indicated the Township's position was a denial of all use. (Id. ¶ 195). On this count, Plaintiff seeks damages, calculated in part from "imputed and billed costs" of $654,011.74, and treble damages "as the corrupt conspiracy has been at the direction of the insurance carriers." (Compl., p. 35).

## IV. Discussion

### A. Conspiracy Allegations Are Deficient as Being Conclusional

Plaintiff avers that certain defendants, but not including the John Doe commonwealth court judges, conspired with other defendants. These allegations of conspiracy are entirely conclusional. (Compl. ¶¶ 28, 66, 71, 78, 93, 122, 131, 193 and pp. 26 and 35). As noted above, Plaintiff "must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[W]e do not consider any conclusory allegations that there was "a corrupt conspiracy,' "an agreement,' or 'an understanding in place' . . . ." *Id.*

We have reviewed Plaintiff's briefs where he argues that he has sufficiently alleged that all the defendants conspired, (e.g. doc. 46, pp. 14-16; doc. 12, pp. 20-21; doc. 18, CM/ECF p. 12), but we disagree. Plaintiff relies on the same factually conclusory allegations as set forth in his complaint. Further, judges do not become co-conspirators with the winning parties in a lawsuit simply because they ruled in those

15

parties' favor. 615 F.3d at 178. Hence, when examining the liability of any defendant, we will look only at that defendant's conduct.

B. *Plaintiff Lacks Standing to Bring a Procedural Due Process Claim, Substantive Due Process Claim, Equal Protection Claim, or a Takings Claim For Conduct of Snyder or the North Hopewell Township Defendants*

Both Snyder and the "North Hopewell Township defendants"[16] move to dismiss the complaint on the basis that plaintiff Dougherty lacks standing to assert the claims.[17] They point out that Melanie Brady and Jean L. Brady own the property, Docson Consulting contracted to make the improvements, and the permit was issued to Kenneth Brady.[18] The only connection that Dougherty has to the claims is that he is the sole member of Docson Consulting, a limited liability company. We agree that this is not enough to confer standing on Dougherty to assert these claims against these

---

[16] North Hopewell Township; the members of the Township Board of Supervisors, Dustin Grove, William Bollinger, and Robert Barclay; and the Township Secretary/Treasurer, Kerrie Ebaugh.

[17] Plaintiff filed suit "for himself and his contracted associates" (doc. 1, Compl., p. 2), Docson Consulting LLC, Jean Brady, and Kenneth Brady. On November 5, 2010, we dismissed these three as plaintiffs, leaving only Keith Dougherty.

[18] They also argue that we lack subject-matter jurisdiction over the claims against them under the *Rooker-Feldman* doctrine. We disagree. We have the benefit of the Third Circuit's recent decision in *Great W. Mining & Mineral Co.*, *supra*, which deals with the *Rooker-Feldman* doctrine. In that case, the Third Circuit listed the four factors that had to be present for applying the doctrine:

> (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

615 F.3d at 166 (quoted case omitted). As the defendants point out, Plaintiff is a state-court loser coming into federal court after the orders were entered, so the first and third factors are satisfied. The defendants' jurisdictional argument fails on the second requirement because Plaintiff is not complaining about injury caused by a state-court judgment. Instead, he is complaining about injury caused by these defendants while matters were still at the Township level.

16

defendants. They are essentially third-party claims as to Dougherty. *See Stacey v. City of Hermitage*, 178 F. App'x 94, 100 (3d Cir. 2006)(per curiam)(nonprecedential) ("prudential standing requires that a litigant assert his own legal interest rather than that of a third party")(cited case omitted).

Plaintiff asserts that he does have standing based on the following. First, he is in a partnership with Jean Brady by virtue of the "Realty Improvement Investment Agreement," and as a partner can represent the partnership. (Doc. 46, CM/ECF p. 5). Plaintiff cites no authority for this contention, and we disagree; contracting parties do not become partners by virtue of the contract between them.

Second, Plaintiff argues he has standing because the agreement contemplated he would be the EAT, the exchange accommodation title holder for the property, for the QEAA, the qualified exchange accommodation arrangement. The contracting parties were allegedly going to use the latter arrangement to defer capital gains under federal tax law, *see* 26 U.S.C. § 1031, on the sale of the property because they were going to use the proceeds to acquire the fast-food restaurant. We reject this argument because Plaintiff had only contracted to be the EAT, and he was not yet the EAT. Hence, even if being the EAT of a property conferred standing to bring the federal claims presented, Plaintiff could not rely on this status to establish standing. In any event, Plaintiff presents no authority that an EAT, who holds legal title to a property for a period of time solely for the tax benefits that accrue to the real party in interest, does have standing to pursue the federal claims of that party.[19]

---

[19]    On this argument, Plaintiff relies on *City of Monterey v. Del Monte Dunes at Monterey, LTD*, 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), but his reliance is misplaced as there the plaintiff was the owner of the property, having purchased it from the preceding owner. Neither does *Bentley v. Ellam*, 764 F. Supp. 322, 326 (M.D. Pa. 1991)(Caldwell, J.), assist him, as there we recognized standing arising from the beneficial interest in real property acquired by the buyers by way of an agreement to purchase the property.

Third, Plaintiff seems to argue that his power of attorney for Jean L. Brady gives him standing. We reject this argument. A power of attorney gives him no ownership interest in the property. Fourth, Plaintiff seems to invoke a liberty interest in freedom of contract, but since he is not party to the agreement, this argument is unavailing.

The complaint must therefore be dismissed against defendant Snyder and the North Hopewell Township defendants as Plaintiff lacks standing to bring these claims against them.

C.    *The Statute of Limitations Bars the Federal Claims Against Snyder and the North Hopewell Township Defendants*

In any event, the federal claims are time-barred. "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). The statute of limitations is an affirmative defense but may be raised in a motion to dismiss if it is apparent from the face of the complaint. *McPherson v. United States*, 2010 WL 3446879, at *3-4 (3d Cir. 2010)(nonprecedential).

Snyder and the North Hopewell Township Defendants argue that the action against them is barred by the statute of limitations. Snyder points to the allegations of the complaint showing that any conduct on his part occurred at the latest in 2007, so the complaint was untimely as against him because it was filed on May 19, 2010, more than two years later. The North Hopewell Township defendants similarly argue that the allegations against them involve conduct occurring no later than 2007.

We agree with Snyder that the action as against him is time-barred. The last action Snyder took was his unsworn testimony at the November 5, 2007, Board of Supervisors meeting, well in excess of two years before the May 19, 2010, filing of the complaint in this action. The complaint was thus untimely as to him.

Plaintiff appears to make the following arguments against this conclusion. First, the conspiracy has "continuing effect." (Doc. 46, p. 6). Aside from the fact that Plaintiff has not adequately pled a conspiracy, the statute of limitations is calculated from the date of the defendant's conduct and is not measured by effects. *See Muma v. High Spec, Inc.*, 2010 WL 4386718, at *3 (3d Cir. 2010)(nonprecedential). Second, Plaintiff contends that the complaint was timely if measured by the statutes of limitations for state-law claims of tortuous interference with contracts and for breach of contract. (Doc. 46, p. 5). However, as Snyder points out, we are dealing with federal civil-rights claims. Third, Plaintiff asserts that his federal claims were preserved by his petition to amend filed on November 4, 2009, in the common pleas action docketed at No. 2009 SU-0006-Y01, in which he mentions potential federal claims. (Doc. 46, Ex. A, CM/ECF pp. 28 and 34). We reject this argument. A federal statute of limitations is not tolled by an assertion in a state-court action that the federal claims are "preserved."[20]

As to the North Hopewell Township defendants, we agree with them that the federal claims based on their conduct through December 2007 are also time-barred as against them. In opposition, Plaintiff has made two of the arguments discussed above, the continuing effect of the conspiracy and the *England* reservation. (Doc. 49, p. 6). For the reasons given above, we reject those arguments. Invoking the discovery rule, Plaintiff also argues that he could not have discovered the claims until December 23, 2009, when he received Judge Linebaugh's order of December 22, 2009, dismissing his latest attempt to file an amended complaint in his state-court mandamus action. (Doc. 49, p. 12; *see also Dougherty v. North Hopewell Twp.*, No. 94 CD 2010, slip op. at

---

[20] Plaintiff appears to be attempting to invoke the "*England* reservation," but that rule does not apply here, for obvious procedural reasons. *See Opdycke v. Stout*, 233 F. App'x 125, 131 (3d Cir. 2007)(nonprecedential). In any event, the petition does not reserve the federal claims; it concedes that the federal claims could be litigated in the state-court action. (Doc. 46, Ex. A, CM/ECF p. 34).

7 (Pa. Commw. Ct. Aug. 5, 2010). We disagree. Plaintiff knew he had a claim against these defendants as soon as they committed their allegedly wrongful conduct at the hearings on the extension request.[21] The North Hopewell Township defendants are therefore entitled on limitations grounds to dismissal of the complaint against them for any conduct occurring through December 2007, which encompasses all claims against them.[22]

Based on the foregoing, we need not address Snyder's and the North Hopewell Township's other grounds for dismissal, claim preclusion and their arguments on the merits of the claims.[23]

D.    *The Claim Against Defendant Pamela Lee Is Time-Barred*

Plaintiff's allegations against Pamela Lee, the York County Prothonotary, are that she "expunged" a default Plaintiff had entered against Snyder in the mandamus action against Snyder after its remand to common pleas court. (Compl. ¶¶ 119 and 120). On September 2, 2008, Plaintiff filed a mandamus action against Lee in common pleas court to compel her to at least enter the attempt at default. In his state-court complaint, Plaintiff alleged that Lee's conduct occurred on or about February 29, 2008. (Doc. 7-2, Ex. 2 ¶ 10, CM/ECF pp. 3-4).

---

[21]    We reject Plaintiff's allegation that Ebaugh's cashing the check is part of the takings claim.

[22]    The only exception is the retaliation claim based on Treasurer/Secretary Ebaugh's deposit of the stop-work-order check on May 20, 2008, which is timely by one day. However, Plaintiff lacks standing to pursue that claim as Docson Consulting issued the check, not Dougherty.

[23]    We note, however, that Snyder and the North Hopewell Township defendants mistakenly relied on federal claim- preclusion law when they should have cited state law on claim preclusion when asking us to dismiss a federal suit on the basis of a previous state case. *See Opdycke, supra*, 233 F. App'x at 128-29.

Lee challenges our subject-matter jurisdiction on the claim against her on the basis of the *Rooker-Feldman* doctrine. She asserts that a ruling in Plaintiff's favor would necessarily call into question Judge Linebaugh's ruling in her favor in the mandamus action against her. However, as we concluded above when the argument was made by Snyder and the North Hopewell Township defendants, we decide that *Rooker-Feldman* does not apply here because the second requirement of the doctrine is not satisfied; Plaintiff is not complaining of injuries caused by a state-court judgment. *See Great W. Mining & Mineral Co.*, *supra*, 615 F.3d at 166. Instead, he is complaining about injuries caused by Lee's refusal to allow a default on the docket.

Among other grounds, Lee also moves to dismiss on the basis of the two-year statute of limitations, pointing out that the filing of the complaint on May 19, 2010, came more than two years after the conduct complained of. In opposition, Plaintiff argues that Lee's conduct could not have been discovered until the "official docket" in 1450 CD 2008 "was transferred whereby Lee 'included' [e]x parte communications in the form of letters . . . ." (Doc. 12, p. 7). We reject this argument. Plaintiff would have known about Lee's conduct at the time it happened. Hence, his claim against her is time-barred.[24]

E.   *The Motion to Dismiss of Defendants, Judge Stephen Linebaugh; J. Robert Chuk, Court Administrator; and the John Doe Members of the Commonwealth Court*

1. *The* Rooker-Feldman *Doctrine Does Not Deprive the Court of Jurisdiction Over the Claims Against These Defendants*

Defendants, Judge Stephen Linebaugh; J. Robert Chuk, the County Court Administrator; and the John Doe members of the Commonwealth Court move to dismiss

---

[24]   We add that it does not appear that Lee violated any of Plaintiff's rights. In an August 2008 letter, Lee explained why the default had not been entered – Plaintiff had not first entered a return of service. (Doc. 1-3, CM/ECF p. 18).

the claims against them. These defendants first contend that under the *Rooker-Feldman* doctrine the court lacks jurisdiction of the claims because Plaintiff is complaining about injuries caused by the state-court orders and that this court would be called upon to decide that the state courts were in error. We disagree.

As noted above, there are four requirements for application of the *Rooker-Feldman* doctrine. Plaintiff easily meets the first and third requirements as he is the state-court loser and filed this suit after entry of the state-court judgments. However, his claims fail to satisfy the second requirement.

In regard to Judge Linebaugh and Court Administrator Chuk, Plaintiff alleges they conspired to have him handle the mandamus action against Snyder so that he could improperly enter a default. In regard to the commonwealth court defendants, Plaintiff alleges the commonwealth court "in its appellate review will establish a pattern of violating both due process and equal protection" by denying pro se litigants procedural due process while protecting government agencies from default and protecting counseled litigants as well. (Compl., ¶ 9). Hence, Plaintiff is not complaining about injuries caused by the state-court judgments but by conduct that violates an independent right. Since the state-court judgments themselves were not the cause of Plaintiff's injuries but were the consequences of an independent violation of Plaintiff's constitutional rights, the second requirement is not satisfied. *See Great W. Mining & Mineral Co.*, *supra*, 615 F.3d at 172 ("The alleged agreement to reach a predetermined outcome in a case would itself violate Great Western's constitutional rights, independently of the subsequent state-court decisions.").[25]

---

[25]    We recognize that we earlier decided that Plaintiff's conclusory allegations of conspiracy are not sufficient. But that was in regard to pleading requirements, and here we deal with *Rooker-Feldman* jurisdiction. Conclusory allegations can be considered on that jurisdictional issue, as *Great W. Mining & Mineral Co.* makes clear.

Having rejected the jurisdictional argument, we turn to the defendants arguments on the merits.

### 2. *Suit Against the Moving Defendants in Their Official Capacities*

#### a. *The Eleventh Amendment Bars Suit Against the Moving Defendants in Federal Court in Their Official Capacities*

The Eleventh Amendment bars suit in federal court against unconsenting states. *Haybarger v. Lawrence County Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008).[26] The bar applies regardless of the relief sought. *Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009). It also applies to entities that are part of the state. *See Benn v. First Judicial District*, 426 F.3d 233, 241 (3d Cir. 2005)(Pennsylvania has a unified state judicial system so judicial districts (i.e. common pleas courts), being "an integral component" of the system, have Eleventh Amendment immunity). *See also Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 253-54 (3d Cir. 2010)("subsidiary units" of the state have Eleventh Amendment immunity). Eleventh Amendment immunity also extends to individual state employees sued in their official capacities "because 'official-capacity suits generally represent only another way of pleading an action' against the state." *Id.* at 254 (quoted case omitted). Thus an associate court administrator sued in her official capacity is entitled to Eleventh Amendment immunity. *See Ball v. Hartman*, No. 09-844, 2010 WL 146319, at *6 (M.D. Pa. Jan. 11, 2010). *See also Galvani v. Pennsylvania*, 329 F. App'x 344, 346 (3d Cir. 2009)(per curiam)(nonprecedential)("District Court Administration of York County" was entitled to Eleventh Amendment immunity).

---

[26]     Pennsylvania has not consented to being sued in federal court. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 n.5 (3d Cir. 2010)(citing 42 Pa. Con. Stat. Ann. § 8521(b)). In this regard, Plaintiff's reliance on 42 Pa. Con. Stat. Ann. § 8522(b)(3), whatever the scope of the waiver there, is misplaced, because it does not waive immunity from suit in federal court.

The judicial defendants and Chuk thus move to dismiss the claims against them in their official capacities as barred by the Eleventh Amendment. Based on the foregoing case law, we agree. Judge Linebaugh is a member of the York County court of common pleas. Since suit against him in his official capacity is really against the judicial district, the suit is barred by the Eleventh Amendment. *See Benn, supra*, 426 F.3d at 241 (Pennsylvania judicial districts protected by the Eleventh Amendment). The same reasoning applies to the John Doe members of the commonwealth court because the commonwealth court is part of the unified judicial system. *See Haagensen v. Supreme Court of Pennsylvania*, 651 F. Supp. 2d 422, 432 (W.D. Pa. 2009)("The Pennsylvania Supreme Court is a court entity of the Unified Judicial System and as such it is an arm of the state for Eleventh Amendment immunity purposes."). Sued in his official capacity, Chuk also has Eleventh Amendment immunity. *See Ball, supra,* 2010 WL 146319, at *6 (M.D. Pa. Jan. 11, 2010)(associate court administrator sued in her official capacity is entitled to Eleventh Amendment immunity). We will therefore dismiss this action against these defendants in their official capacities.

> b. *The Civil Rights Claims Against These Defendants In Their Official Capacities Fail on the Merits Because Defendants Sued In Their Official Capacities Are Not "Persons" Under Section 1983*

These defendants also move to dismiss the claims against them because they are not "persons" against whom suit can be brought under 42 U.S.C. § 1983 when sued in their official capacities. The defendants cite *Callahan v. City of Philadelphia*, 207 F.3d 668, 673 (3d Cir. 2000), where the Third Circuit held that the "Warrant Division" and the "Eviction Unit" of the First Judicial District, part of the unified judicial system, were not persons within the meaning of section 1983. We agree with defendants' position.

### 3. *The Judicial Defendants and Court Administrator Chuk Are Absolutely Immune From Any Damages Claim*

Judge Linebaugh and the John Doe commonwealth court defendants also move to dismiss the case against them on the basis of absolute judicial immunity. It is a well-established principle that judges are absolutely immune from suit for damages when they act in a judicial capacity. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 12, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978)(internal citation omitted).

Here, Plaintiff's claims against the judicial defendants arise solely from their actions in a judicial capacity, resulting from their issuance of court orders in the regular conduct of court business. They are therefore entitled to absolute immunity from Plaintiff's claim for damages.[27]

Court Administrator Chuk also asserts immunity from damages, citing in part, *Ball v. Hartman*, No. 09-844, 2010 WL 146319, at *6-7 (M.D. Pa. Jan. 11, 2010)(associate court administrator entitled to quasi-judicial immunity when acting "as an extension of the court in exercising her responsibilities of case management"). We agree that quasi-judicial immunity extends to defendant Chuk for Plaintiff's damages claim against him as he is only alleged to have assigned the mandamus action against defendant Lee to Judge Linebaugh. *See also Erb v. Sullivan*, No. 09-2123, 2010 WL

---

[27]   At this time, we see no issue concerning injunctive relief. As to the request for injunctive relief in Count I against any hearings on costs or fees arising from sanctions imposed in No. 1200 CD 2009, we will await the filing of an amended complaint. In any event, this request appears to have been mooted by the trial court's award of fees on February 23, 2010, (doc. 18, CM/ECF p. 64), on remand from the commonwealth court's decision in 1200 CD 2009.

4922732, at \*4-5, (M.D. Pa. Sept. 10, 2010)(court administrator entitled to quasi-judicial immunity for answering questions regarding the "call of the list"), approved 2010 WL 4919068.

## V. Amendment of the Complaint

As Defendants Linebaugh, Chuk, and the John Doe members of the Commonwealth Court point out in their motion to dismiss, Plaintiff's complaint is replete with factual allegations that, because they are conclusory, cannot be considered in evaluating Plaintiff's claims. Plaintiff seems to think that any factual allegation will do, but that is not correct. "We [must] disregard legal conclusions and 'recitals of the elements of a cause of action supported by mere conclusory statements.'" *Santiago v. Warminster Twp.*, __ F.3d __, __, 2010 WL 5071779, at \*3 (3d Cir. 2010)(quoting *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). "'[N]aked assertions devoid of further factual enhancement'" will not do. *Id.* at \*5 (quoting *Iqbal*, 129 S.Ct. at 1949).

Thus, in this case, we cannot consider a sweeping statement such as Snyder and the Supervisors "join[ed] in a conspiracy" to violate his procedural due process rights so that they could avoid financial liability and so that they could "extort[ ] bribes" and collect "fees a second time," (*id.* ¶ 66), by requiring another permit application. We likewise must disregard conclusory allegations that the commonwealth court "has a pattern of violating both due process and equal protection" by denying pro se litigants procedural due process while protecting government agencies from default and counseled litigants as well (Compl. § 9), or that the commonwealth court "is part of a corrupt mechanism to interfere with private property interests and the PCCA serves as cover for this corruption." (Compl., ¶ 132).

Generally, we should grant leave to amend the complaint unless amendment would be inequitable or futile. *Great W. Mining & Mineral Co., supra,* 615

F.3d at 174. We cannot say amendment would be futile,[28] and none of the defendants argue that it would. We will therefore grant Plaintiff leave to file an amended complaint.[29] Plaintiff should bear in mind the need to allege more than just conclusory allegations.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: January 25, 2011

---

[28]     Based on the attempt to file a Joinder Complaint (doc. 84), Jean L. Brady and Kenneth Brady may again be plaintiffs although they must actually sign any amended complaint. Typewritten "signatures" are not enough. Given the history of this case, with plaintiff Dougherty attempting to file suit on behalf of "his contracted associates," any complaint purporting to include Jean L. Brady and Kenneth Brady must also be accompanied by separate affidavits signed by each of these individuals affirming that they wish to be plaintiffs in this action, that they have actually signed the complaint, and that they understand they are signing subject to the requirements of Fed. R. Civ. P. 11.

[29]     In the original complaint, almost in passing, Plaintiff made state-law claims for violations of the Pennsylvania Constitution and Pennsylvania common law, (Compl. ¶ 13), but Plaintiff did not allege the state constitutional provisions violated or the common law actions invoked. If state-law claims are made in the amended complaint, Plaintiff shall specify the constitutional provisions and common-law claims relied upon. In the meantime, we will dismiss any supplemental state-law claims pursuant to our authority under 28 U.S.C. § 1367(c)(3).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH DOUGHERTY, et al.,                    :

      Plaintiffs                            :

                                 :

      vs.                                    :         CIVIL NO. 1:CV-10-1071
                                                          **FILED**
                                 :         HARRISBURG, PA

JONATHAN SNYDER, et al.,                    :

      Defendants                            :         JAN 25 2011

                                                MARY E. D'ANDREA, CLERK
                                                Per _____
                                                        Deputy Clerk

*O R D E R*

AND NOW, this 25th day of January, 2011, it is ordered that:

1. The motion (doc. 7) to dismiss of defendant Pamela Lee is granted.

2. The motion (doc. 14) to dismiss of defendants, Judge Stephen Linebaugh, J. Robert Chuk, and the John Doe members of the Commonwealth Court is granted.

3. The motion (doc. 44) to dismiss of defendant Jonathan Snyder is granted and Plaintiff's cross-motion (doc. 46) is denied.

4. The motion (doc. 47) to dismiss of defendants North Hopewell Township; Dustin Grove, William Bollinger, and Robert Barclay, the members of the Township Board of Supervisors; and Kerrie Ebaugh, the Township Secretary/Treasurer is granted.

5. Any supplemental state-law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3) without prejudice to bringing them in state court.

6. This action is hereby dismissed, but Plaintiff is granted twenty-one days from the date of this order to file an amended complaint in conformity with the accompanying memorandum.

                           /s/William W. Caldwell
                           William W. Caldwell
                           United States District Judge