IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH DOUGHERTY, et al.,                  :

           Plaintiffs                       :

                                   :

           vs.                              :          CIVIL NO. 1:CV-10-1071

                                   :

JONATHAN SNYDER, et al.,                  :

           Defendants                       :

*M E M O R A N D U M*

I.        *Introduction*

        This civil-rights action was initiated by the pro se plaintiff, Keith Dougherty.  It arises from the issuance of a building permit for improvements to be made to a residence located in North Hopewell Township, with the anticipation of selling the house at a profit.  The improvements were begun but never completed. Plaintiff Dougherty traced the situation to the actions of the Township and its agents as Plaintiff invoked rights under the Pennsylvania Construction Code Act ("PCCA"), 35 Pa. Stat. Ann. § 7210.101-7210.1103 (West 2003), in an attempt to get construction of the improvements back on track.  He also complained about rulings made by the state courts in actions he filed, in part, to remedy the alleged violations of the PCCA on the part of the Township and its agents.  Federal constitutional claims were made for violations of procedural due process, substantive due process, equal protection, and the takings clause of the Fifth Amendment.  The complaint also mentioned the Pennsylvania Constitution and Pennsylvania common law.

        The defendants filed motions to dismiss.  On January 25, 2011, we granted those motions but allowed plaintiff Dougherty leave to amend.  *Dougherty v.*

*Snyder*, 2011 WL 292236 (M.D. Pa.).  On February 15, 2011, Dougherty filed an amended complaint (doc. 124), with additional plaintiffs and defendants.  We are considering the defendants' motions to dismiss that pleading.

On the amended complaint, the plaintiffs, all proceeding pro se, are: Keith Dougherty ("Dougherty"), the sole member of Docson Consulting LLC, the limited liability company that had contracted to make the improvements to the property[1]; Keith Dougherty Insurance and Consulting, a sole proprietorship operated by Dougherty; Jean L. Brady, one of the owners of the property; and Kenneth Brady, formerly married to Melanie Brady, the other owner of the property.[2]  The defendants are: North Hopewell Township; Dustin Grove, William Tollinger, and Robert Barclay, the members of the Township Board of Supervisors; Kerrie Ebaugh, the Township Secretary/Treasurer; Jonathan Snyder, the Township's Building Construction Officer at the relevant time; Stephen Linebaugh, Judge of the York County Court of Common Pleas; Pamela Lee, the court's Prothonotary; J. Robert Chuk, District Court Administrator for the court; John Doe members of the Pennsylvania Commonwealth Court, "as authors of per curiam opinions 553 CD 2007, 317 MD 2008,[3] 1450 CD 2008, 629 CD 2009, and 1200 CD 2009"; Ron Englar, the U.C.C.[4] Field Operations

---

[1]   By order of November 5, 2010, we dismissed Docson Consulting as a plaintiff because it was not represented by counsel and, as a limited liability company, it could not appear pro se.  In the amended complaint, it is listed as a "nominal" plaintiff, but our order of November 5 still stands; Docson Consulting is not a plaintiff.

[2]   In the order of November 5, 2010, dismissing Docson Consulting as a plaintiff, we also dismissed Jean Brady and Kenneth Brady as plaintiffs because they had not signed the original complaint and they could not be represented by Dougherty, who was not a lawyer. Jean Brady and Kenneth Brady have signed the amended complaint, thereby making them pro se plaintiffs on the amended complaint.

[3]   In the caption of his complaint and sometimes in the body of the complaint, Plaintiff refers to 317 MD 2007, but the docket number is actually 317 MD 2008.

[4]  Uniform Construction Code.

2

Manager for the Pennsylvania Department of Labor and Industry; Melanie Brady; Darrell VanOrmer, Melanie Brady's lawyer in her state-court action against Jean Brady to partition the property; and "unnamed insurance carriers" for the Township. The individual defendants working for the state or the Township have been sued in their individual and official capacities.

We are considering the following motions to dismiss under Fed. R. Civ. P. 12(b)(6): (1) Pamela Lee's motion (doc. 125); (2) the motion of North Hopewell Township, its supervisors and its Secretary/Treasurer (doc. 132); (3) the motion of Darrell VanOrmer (doc. 133); (4) the motion of Melanie Brady (doc. 134); (5) the motion of Judge Linebaugh, Chuk, and the John Doe commonwealth court judges (doc. 136); and (6) the motion of Jonathan Snyder.

II.     *Standard of Review*

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." On a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted).

A complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Detailed factual allegations are not required, *id.* at 555, 127 S.Ct. at 1964, but the "'plausibility standard' . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556,

3

127 S.Ct. at 1965)).  "[M]ore than labels and conclusions" are necessary.  *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65.  "[A]llegations that are merely consistent with liability are insufficient to state a claim for relief that is plausible on its face . . ." *Laffey v. Plousis,* 364 F. App'x 791, 794 (3d Cir. 2010) (nonprecedential) (quoting *Iqbal*, 129 S.Ct. at 1949)(internal quotation marks omitted).[5]

Additionally, when a plaintiff, as here, alleges a conspiracy, he "must assert facts from which a conspiratorial agreement can be inferred."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "[C]onclusory allegations that there was 'a corrupt conspiracy,' 'an agreement,' or 'an understanding in place'" are not sufficient.  *Id.*  The winning party in a lawsuit does not automatically become a co-conspirator with the judge simply because he won.  *Id.*

The court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, matters of public record, and indisputably authentic documents.  *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006).  This includes court filings.  *See Churchill v. Star Enterprises*, 183 F.3d 184, 190 n.5 (3d Cir. 1999)(citing *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  *See also Parks v. Twp. of Portage*, 385 F. App'x 118, 120 (3d Cir. 2010)(per curiam) (nonprecedential)(on a motion to dismiss for lack of jurisdiction the court would take judicial notice of publicly available state-court opinions).  When the allegations of the complaint differ from the documents attached to the complaint, the documents control, and the allegations of the complaint need not be accepted.  *ALA, Inc. v. CCAIR, Inc.*,

---

[5]   In *Twombly*, the Supreme Court stated that the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), no longer has a place in resolving Rule 12(b)(6) motions.  550 U.S. at 562-63, 127 S.Ct. at 1969.

29 F.3d 855, 859 n.8 (3d Cir. 1994); *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010).

Finally, while "pro se complaints are 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers,'" *Jackson v. Div. of Developmental Disabilities*, 394 F. App'x 950, 951 n.3 (3d Cir. 2010)(per curiam) (nonprecedential)(quoted case omitted), a pro se complaint must still "contain allegations permitting 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoted case omitted).

With these principles in mind, we provide the background to this case, as Plaintiff alleges it.

III.     *Background*

The amended complaint alleges as follows.  Melanie Brady and Jean L. Brady were the deed holders on the property, (doc. 124, Am. Compl. ¶ 88), although Kenneth Brady and Melanie Brady, who were husband and wife, had lived there during their marriage.  (*Id.* ¶ 87).

On July 28, 2006, Melanie and Kenneth Brady executed a "Divorce/Separation Agreement."  (*Id.* ¶ 199; Am. Compl., Ex. B).  The agreement contemplated that within a short time either a sale of the marital home would occur or that it would be improved and then sold.[6]  The parties to the agreement "were strictly prohibited from interfering with 3rd party arrangements in any way."  (Am. Compl. ¶

---

[6]     In part, the agreement read: "The house shall be put on the market for sale or conditional improvement and sale no later than 30 days after the execution of this document." (Am. Compl., Ex. B).

204).[7]  Melanie Brady was paid $2,500 at the time of the agreement, leaving her with

"no further claim against the real estate." (*Id.* ¶ 208).

Dougherty, Keith Dougherty Insurance and Consulting, and Docson

Consulting "contracted with" Jean L. Brady "whereby Keith Dougherty purchaser with

POA fbo Jean Brady [as to management and sale of her interest in the real estate in

question] and exclusive rights with regard to design and or implementation of

improvements and sale of project. [Such disclosure and design is made Part of

EXHIBIT 1 "The Sales Agreement" with expressed intent to defer taxation for non-

resident owners].  And incorporated by reference for the purpose of tax Deferral of

Docson Consulting LLC EXHIBIT A.  With further detail as to intendment of sale to

Keith Dougherty outlined in the Disclosure document EXHIBIT C." (*Id.* ¶ 31).[8]

---

[7]     The agreement actually reads: "Any arrangements with third parties can not be disturbed in any way with regard to construction arrangements and sale so long as the current equity is preserved and guaranteed with no unreasonable delay preventing sale." (Doc. 124, Am. Compl., Ex. B, CM/ECF p. 52).  The page number refers to the page number assigned by the Case Management/Electronic Case Files (CM/ECF) system.

[8]     There is no Exhibit 1 to the amended complaint.  (Exhibit B to the amended complaint is also marked Exhibit 1 but that must have been for some other proceeding.)  There is an Exhibit 1 to the original complaint, a document entitled "Realty Improvement Investment Agreement."  The original complaint and its exhibit 1 explain the relationship between the plaintiffs and related business entities better:

> On July 29, 2006, Docson Consulting entered into a "Realty Improvement Investment Agreement" with Jean L. Brady to make improvements to the property with the goal of quickly selling it.  (Compl., Ex. 1).  Docson Consulting was responsible for all design plans and all funding for permits and improvements.  (*Id.*)  The costs of fees and improvements were to "be added to the current mortgages" and then the excess (presumably the profit) was to be split at the time of sale 50-50 between Docson Consulting and the owners.  (*Id.*).  Plaintiff Dougherty was to provide supervision and inspection "for a fee of $3,100 (to include [a] QEAA as necessary)." (*Id.*).  The agreement was signed by Keith Dougherty for Docson Consulting LLC and by Kenneth Brady for CUC Towson Inc. Jean Brady, Owner.  (*Id.*).  Melanie Brady was compensated for waiving all claims to the property.  (Compl. ¶ 75).

*Dougherty*, *supra*, 2011 WL 292236, at *2.  A "QEAA" is a qualified exchange accommodation arrangement, a way under federal tax law, see 26 U.S.C. § 1031, to defer capital gains when

Proceeds from the sale of the house were to be used for the construction of a "Cluck U" chicken franchise, (*id.* ¶ 202), which had a deadline of April 30, 2008.  (*Id.* ¶ 203).

On August 17, 2006, Kenneth Brady applied for the building permit.  (*Id.* ¶ 33).  On October 4, 2006, the permit was issued.  (*Id.* ¶ 35).  Docson Consulting made payment of $1,131.50 for the fees, (*id.*), and then an additional fee of $438.90, allegedly illegally imposed when Snyder "unlawfully add[ed] additional inspections" after he found out there was an "additional payor."  (*Id.* ¶ 36).  Plaintiffs allege that the permit "is valuable personal property owned by Docson Consulting LLC."  (*Id.* ¶ 38).[9]

About May 2007, Snyder had his son inform Kenneth Brady of a stop work order "based on a suspicion and without inspection."  (*Id.* ¶ 43).  Plaintiff Dougherty sought clarification and Snyder told him he had "forg[otten]" that the permit involved a second-story addition of three bedrooms and a bath.  (*Id.* ¶ 44).  This addition would "chang[e] the load bearing walls from East and West to North and South."  (*Id.*).

At some point, work resumed after Snyder had familiarized himself with the "engineered lumber" being used.  In late May 2007, Snyder required three changes: (1) "bolt the first floor addition to the new garage with ½ carriage bolts"; (2) "replace the second story bedroom windows to meet the newer egress requirements"; and (3) "cut footings into the basement floor 3'X 3' 12" thick using ½ rebar."  (*Id.* ¶¶ 58-61).

On June 15, 2007, Plaintiff Dougherty advised they were ready for inspection, but Snyder refused to perform the inspection, with no written explanation,

---

business property is sold and the proceeds used to acquire another business property. Plaintiff Dougherty was contracted to be the "EAT," the exchange accommodation title holder, who would hold the property during the time the necessary transactions took place.

[9]   The permit is attached to the original complaint as Exhibit 2.  The permit shows that it was issued to Kenneth Brady as owner of the property.

only "an inference to a Septic System permit."  (*Id.* ¶¶ 63-64).  On no fewer than five occasions, Snyder scheduled inspections and then simply refused to show without comment.  (*Id.* ¶ 69).

On October 12, 2007, Plaintiff Dougherty hand-delivered a written request for extension of the building permit.  (*Id.* ¶ 70).  On October 31, 2007, the "SEO" issued a septic system permit to accommodate the bedroom addition, and on November 1, 2007, Dougherty visited Snyder's office, hand-delivered the septic permit, and asked about the status of the extension request.  (*Id.* ¶¶ 71 and 72).  The person in the office said it was still under review.  (*Id.* ¶ 73).  The Township's Secretary/Treasurer, Ebaugh, then "knowingly and improperly advised" Dougherty that such appeals and requests go to the "Governing Board."[10]  (*Id.* ¶¶ 75 and 76).

Plaintiff Dougherty was heard at the Supervisors' meeting on November 5, 2007.  (*Id.* ¶ 77).  He alleges that Snyder lied at the meeting concerning his knowledge of the extent of the improvements intended for the property and about his refusal to perform inspections.  (*Id.* ¶¶ 78-79).  The Supervisors disposed of the extension request at that time by deciding that only Kenneth Brady, the building permit holder, could apply for an extension, even though Kenneth Brady was not a deed holder and had not paid for the permit.  (*Id.* ¶ 81).  Plaintiffs allege Snyder and the Supervisors "join[ed] in a conspiracy" to violate "procedural due process" so that they could avoid financial liability (presumably for their mishandling of the permit process) and so that they could "extort[ ] bribes" and collect "fees a second time," (*id.* ¶ 80), by requiring another permit application.  "The Township is part of a conspiracy to collect

---

[10]    The reference to the "Governing Board" is to the Township's Board of Supervisors. Under the PCCA, for those municipalities that choose to create a "board of appeals," appeals are supposed to go to that board, and no member "of the municipality's governing body" is allowed to serve on that board.  *See* 35 Pa. Stat. Ann. § 7210.501(c)(1); 34 Pa. Code §§ 403.121-122.

fines and fees without providing a hearing before a construction appeals board." (*Id.* ¶ 145).[11]

Docson Consulting had paid all fees and costs under the agreement to improve the property, and profit of $100,000 had been anticipated. (*Id.* ¶ 84). Snyder's and the Supervisors' actions resulted in a taking of this investment asset. (*Id.*).

As a result of progress being halted, "Kenneth Brady lost his only means of earning a living (working as a subcontractor on the project in question)." (*Id.* ¶ 94). He "fell behind on his truck payments and child support payments" as plaintiff Dougherty attempted to move the project forward. (*Id.* ¶ 95). In September 2007, Brady "was incarcerated for unpaid child support" and soon thereafter "lost his truck to repossession." (*Id.* ¶¶ 96 and 97).

On or about November 16, 2007, Dougherty filed a mandamus action against Snyder in the Pennsylvania Commonwealth Court under Number 553 MD 2007. (*Id.* ¶ 100). On November 19, 2007, Dougherty "hand deliver[ed]" the complaint to Snyder. (*Id.* ¶ 102). In the action, Plaintiff requested a writ of mandamus directing Snyder to declare the building permit was still valid. (Doc. 15-4, Supp'n Br. of judicial defendants, per curiam opinion of the commonwealth court, CM/ECF p. 6). On November 20, 2007, the commonwealth court, deciding it lacked jurisdiction, sua sponte transferred the action to the York County Common Pleas court. (Compl. ¶ 101; 553 MD 2007 docket; doc. 149-4, CM/ECF p. 2). The latter court, by way of Judge Linebaugh, dismissed the action for lack of service on Snyder. (Compl. ¶ 112). The

---

[11]     Plaintiffs also allege that "the Defendants have established a pattern and practice . . . whereby 'outsiders' are thwarted in their efforts to obtain building permits, use the building permits obtained and complete in an orderly fashion contracts intended to produce income in the lawful pursuit of happiness." (*Id.* ¶ 14).

dismissal violated the First Amendment and Pennsylvania Supreme Court rules on service.  (*Id.*).[12]

On November 21, 2007, Snyder issued a stop work order, in alleged ignorance of an automatic stay.  The stop work order set forth numerous violations of the PCCA and Pennsylvania regulations enforcing the act.  Included in the stop work order was notification that Snyder intended to charge North Hopewell Township for his time spent in defending against litigation.  (*Id.* ¶ 103 and Ex. 3 to the original complaint).

On December 4, 2007, the Supervisors held a meeting at which the extension of time for the permit was again considered.[13]  At the meeting, the Township solicitor and his partner "retired to a back office" with the Supervisors to decide on the extension request.  The Township solicitor, in knowing violation of the PCCA, said all they had to do was apply for a second permit, even though he knew that appeals could not be heard by the Board of Supervisors and that extensions are automatically granted if the request is pending for more than thirty days, "(constituting a conspiracy to void due process and punish the plaintiff for demanding inspections)."  (Am. Compl. ¶¶ 7, 104-107).

Snyder, the solicitor, Supervisors, and Secretary/Treasurer, in violation of procedural due process, declared the permit expired, without any hearing, cross-examination of witness, presentation of evidence, or written explanation of the decision.  (*Id.* ¶ 111).

---

[12]  Plaintiffs also allege Judge Linebaugh "was the judge in the Brady child custody arrangement where an onerous potential burden led to the desired outcome (failure to remain current)."  (*Id.* ¶ 99).

[13]  Dougherty "posted $3,000" so that Kenneth Brady could attend this meeting.  (*Id.* ¶ 104).

In about April 2008,[14] Plaintiff filed a complaint with the Pennsylvania Department of Labor and Industry about the actions of Snyder and the Supervisors concerning the building permit.  (*Id.* ¶ 113).[15]  As a result, in June 2008, Michael G. Gensemer, the Chief of the Department's U.C.C. Inspection Division, wrote a letter to Snyder.  (*Id.* ¶ 220).  Gensemer found fault with Snyder's handling of the permit application and placed a warning letter in his certification file.  In doing so, Gensemer criticized Snyder's failure to require "construction documents," observing that the submission of construction documents may be waived "**only** when the nature of the construction does not require review of construction documents to determine compliance with the Uniform Construction Code."  (Doc. 1-3, Original Compl., Ex. 5, CM/ECF p. 15)(emphasis in the exhibit).[16]  According to Plaintiffs, Gensemer's use of the word "only" was an unlawful addition to the statute to support an "indefinable standard and or difference between 'one and two family homes' and 'commercial' construction . . ."  (Am. Compl. ¶ 220).  In July 2008, responding to a June 2008 letter from Dougherty about North Hopewell Township, Gensemer wrote that the Department does not investigate municipalities and does not have jurisdiction over criminal matters such as Dougherty's charge of extortion.  He added that North

---

[14]  Plaintiff alleges April 2007 but, given the time frame, it must be 2008.

[15]  Under the PCCA, the Department is obligated, among other things, to investigate municipalities and construction code officials concerning enforcement and administration of the act.  See 35 Pa. Con. St. Ann. § 7210.105(a)(1).  The Department enforces the PCCA "except for residential buildings and utility and miscellaneous use structures in municipalities that have not adopted an ordinance to enforce the act under section 501(a)(1) of the act (35 P.S. § 7210.501(a)(1))."  34 Pa. Code § 403.141 (c).

[16]  Gensemer's criticism of Snyder included the observation that "[d]ocuments submitted for this project included a set of plans, which lack scaled floor plans, lack any indication that bearing walls and columns were being moved, and that new engineered joists were being installed."  (*Id.*, Ex. 5, CM/CF p. 14).

Hopewell Township had a new building code officer.  (*Id.* ¶ 221; Original Complaint, Ex. 6, CM/ECF p. 16).

In the meantime, on June 12, 2008, Dougherty filed a mandamus action against Gensemer in the commonwealth court, docketed at 317 MD 2008, apparently to compel him to investigate the Township.  (Am. Compl. ¶ 125; commonwealth court docket sheet in *Dougherty v. Gensemer*, No. 317 M.D. 2008).  On January 12, 2009, the "corrupt Commonwealth court" dismissed the action for failure to join the Township as an indispensable party.  (*Id.* ¶ 126).  This allegedly violated equal protection.  (*Id.* ¶¶ 126-27).  The ruling was also irrational as the Township had no right to be part of a lawsuit attempting to compel an investigation of the Township.  (*Id.* ¶ 126).

At some unspecified time after the improvements were begun, despite having disclaimed any interest in the property,  Melanie Brady, Kenneth Brady's former wife, changed her mind.  (*Id.* ¶¶ 91, 209).  At some point, she "conspired" with Snyder "to prevent any further progress . . . ."  (*Id.* ¶ 92).  She and Snyder "concocted a conspiracy to breach by way of tortuous interference  the contracts owned by Keith Dougherty with Jean Brady and Kenneth Brady."  (*Id.* ¶ 211).  She wanted to injure her ex-husband by causing him to "lose his only means of earning a living" (working on the improvements) and force him back to jail for unpaid child support.  (*Id.* ¶ 214).  In fact, in September 2007, Kenneth Brady was incarcerated for unpaid child support.  (*Id.* ¶ 96).  She wanted to avoid paying Docson Consulting for its expenses and Keith Dougherty for payments that were to go to him under the contracts.  (*Id.* ¶ 213).  As part of the conspiracy, on June 6, 2008, represented by Darrell VanOrmer, Melanie Brady filed a partition action in state court against Jean L. Brady, doing so without joining Docson Consulting as a necessary party and making false statements that there were no other financially interested parties.  (*Id.* ¶¶ 98, 213; doc. 58, CM/ECF p.

21, state-court partition-action memorandum on default motion against Jean L. Brady).
About two years later, on June 8, 2010, Melanie Brady moved for a default judgment in
the action, and the court ordered a partition on August 24, 2010.  (Doc. 58, CM/ECF p.
21, state-court partition-action memorandum, CM/ECF pp. 22 and 25).

After the mandamus action against Snyder had been remanded to the
common pleas court, Dougherty attempted to enter a default against him.  According
to Plaintiff, the default had actually been entered on the docket but then "expunged" by
defendant, Pamela Lee, the York County Prothonotary.  (*Id.* ¶ 134).  On September 2,
2008, Dougherty filed a mandamus action against Lee in common pleas court,
docketed at 2008-SU-4344-08, to compel her to at least enter the attempt at default on
the docket so he could appeal the Prothonotary's unlawful act, unlawful in Plaintiff's
view because the government (meaning Snyder) is not a person entitled to due
process so judgment can be entered against it at anytime under state rules.  (*Id.* ¶
135).[17]  The defendant Court Administrator, J. Robert Chuk, assigned the case to
Judge Linebaugh.  (*Id.* ¶ 136).  This "conspiracy" violated procedural due process
because Judge Linebaugh was not a neutral arbitrator as evidenced by his ruling on
service of process in the mandamus action against Snyder that originated in the
Pennsylvania Commonwealth Court under Number 553 MD 2007, but which was
appealed under 1450 C.D. 2008.  Judge Linebaugh also could not be neutral because
his judicial conduct was exposing him to liability for damages.  (*Id.* ¶¶ 136-37).

Plaintiffs allege that Pennsylvania courts will not recognize an "inverse
condemnation" cause of action.  Additionally, in violation of the First Amendment, the
courts will require service by the sheriff as the only valid method of service for a case

_____

[17]    Exhibit 8 to the original complaint is Lee's letter to Dougherty explaining why she
would not enter default.  According to the letter, it was because Plaintiff had not first entered a
return of service.  She also recommended that he consult an attorney.  (Doc. 1-3, CM/ECF p.
18).

challenging a governmental determination, citing York County Local Rule 6017 and Pa. R. App. P. 1514. (*Id.* ¶¶ 138-39). Plaintiffs specifically challenges the result in *Dougherty v. Snyder*, No. 1450 CD 2008 (Commw. Ct.), where the commonwealth court allegedly refused to entertain Dougherty's claim of default on the basis that it had not been properly raised in the trial court. (*Id.* ¶ 139; doc. 149-3, Ex. C, CM/ECF pp. 14-15).

On March 26, 2009, Dougherty filed a mandamus complaint in the common pleas court in the original mandamus proceedings against Snyder. (York County, 2007-SU-5136-Y08). He also tried to reinstate the original complaint. On May 22, 2009, the common pleas court dismissed the action because Plaintiff had failed to file an amended complaint as initially directed and instead, standing on his complaint, had taken the appeal docketed at 1450 CD 2008, decided adversely to Plaintiff on March 6, 2009. Plaintiff appealed the May 22 decision. In affirming the lower court in 1200 CD 2009, the commonwealth court imposed attorney's fees as a sanction. (Doc. 149-2, Ex. B, CM/ECF p. 20). Plaintiffs allege that these fees were improperly "assessed for demanding due process." (Am. Compl. ¶ 141).

After Snyder issued the November 21, 2007, stop work order, Docson Consulting issued a check in the amount of $1,549.17, dated November 28, 2007, (Original Compl., Ex. 4, CM/ECF p. 13), officially to cover a fee for the stop work order, (*id.*, CM/ECF p. 6), but which Plaintiffs call a "fine." The Township deposited this check on May 20, 2008. (Am. Compl. ¶ 142). Plaintiffs allege it violates the PCCA to impose fines as the first step in any enforcement proceeding. (*Id.* ¶ 143). Defendant, Kerrie Ebaugh, the Secretary/Treasurer, cashed the check in retaliation for Dougherty's filing of an amended complaint on May 14, 2008, in the original mandamus action adding the Board of Supervisors as defendants, (*id.* ¶ 204).

Dismissal of this amended complaint was the subject of the appeal in No. 1450 CD 2008.  *See* Doc. 149-3, CM/ECF p. 6.

In Count I, asserting irreparable injury, permanent injunctive relief is sought against all the defendants, some of which is really a claim for damages.  The relief sought is: (1) a prohibition on any hearings for costs and fees based on Dougherty's demanding his right to procedural due process; (2) a refund of the "fines" imposed by the November 21, 2007, stop work order; (3) an extension of time on the building permit; (4) payment from the defendants of $600,000 plus interest, the alleged value of the lost fast-food franchise because Plaintiffs could not take advantage of the section 1031 exchange; (5) other damages in the amount of $889,572.09; and (6) punitive damages "as the corrupt conspiracy has been at the direction of the insurance carriers acting in bad faith."  (Am. Compl., p. 31).[18]

In Count II, a substantive due process claim is made against all the defendants.  Dougherty alleges he has a liberty interest in contracting to purchase and improve real estate within the terms that are agreeable to the plaintiff and his investors.  (Am. Compl. ¶ 157).  Plaintiff alleges he has "property interests in the papers and real property and the proceeds from his and their combined labor."  (*Id.*). He avers the defendants have acted "fraudulent[ly]" and "dishonest[ly] specifically to interfere with plaintiff's interests in working on current and future profitable projects." (*Id.* ¶ 158).  Defendants have acted unlawfully in fining Plaintiff for attempting to force a hearing on the request for extension of time, and Plaintiff is "now being prosecuted by the same unlawful lower court for appealing" that due process violation.  (*Id.* ¶ 160). Dougherty seeks the following injunctive relief on this count: (1) prohibit North

_____

[18]   The unnamed insurance carriers are mentioned only in this prayer for relief and the prayers for relief in counts VI and IX .

Hopewell Township from listing itself as an "opt in" township until it has passed an ordinance in accord with the procedures of the PCCA; (2) prohibit the Township from declaring permits expired after twelve months; and (3) prohibit the Township's Board of Supervisors from hearing appeals involving the PCCA.  (Am. Compl., pp. 32-33).

In Count III, a procedural due process claim is made against all the defendants based upon the alleged violations of the PCCA and the alleged errors by the state courts, which supposedly exhibit a lack of impartiality by decision-makers, judicial and otherwise.  In regard to the state courts, the courts of common pleas allegedly "act as an extended defense firm" so that when a default occurs, as it did in Dougherty's case, the Prothonotary expunges it from the record and the Court Administrator ignores due process and assigns Plaintiff's cases to Judge Linebaugh, "the subject of a Judicial Conduct complaint" who "has pecuniary interest in the outcome."  (Am. Compl. ¶ 21).  Plaintiffs allege the commonwealth court "in its appellate review will establish a pattern of violating both due process and equal protection" by denying pro se litigants procedural due process while protecting government agencies from default and protecting counseled litigants as well.  (Am. Compl. ¶ 22).  Plaintiffs allege that the commonwealth court "is part of a corrupt mechanism to interfere with private property interests and the PCCA serves as cover for this corruption."  (Am. Compl. ¶ 146).  Plaintiffs attack the rulings of the commonwealth court and Judge Linebaugh and the actions of Lee and Chuk as "conscience shocking."  (*Id.* ¶¶ 172-180).  In Count III, the following relief is sought: (1) a declaration that the enforcement of the PCCA by the courts and the Department of Labor and Industry violates the First, Fifth and Fourteenth Amendments; (2) an injunction against the Commonwealth's collection of fees until proper due process procedures are established.  (Am. Compl., p. 36).

In Count IV, Plaintiff Dougherty asserts a procedural due process claim against all the defendants based upon: (1) the commonwealth court's denial of his appeal in *Dougherty v. North Hopewell Township*, No. 94 CD 2009 (Pa. Commw. Aug. 5, 2010), and the court's imposition on him of attorney's fees in that case, (No. 94 CD 2009 docket sheet, orders of Sept. 15, 2010, and Jan. 28, 2011); (2) the Superior Court's quashal of his appeal of his appeal in Melanie Brady's partition action against Jean L. Brady, *Brady v. Brady*, No. 1565 MDA 2010 (Pa. Super. Ct. orders of Jan. 3, and Jan. 26, 2011); and (3) certain actions of the Township Board.  (Am. Compl. ¶¶ 189-90).  He alleges he was being punished for seeking due process.  (*Id.*, ¶ 191). Plaintiff requests the following injunctive relief: (1) prohibit the defendants from holding a hearing to assess the amount of the fees; (2) prohibit the defendants from requiring a second building permit application as the first one is still valid; (3) require the refund of the "fines" paid as a result of the November 21, 2007, stop work order.  (Am. Compl., p. 37).

In Count V, Plaintiffs assert an equal protection claim against all the defendants, alleging that pro se litigants do not have the same procedural due process rights as counseled litigants, (*id.*, ¶ 195), citing 42 Pa. Cons. St. Ann. § 708 (West 2004).  They also assert it violates equal protection to modify the building permit process without a legitimate government interest.  (*Id.* ¶ 196).  The following declaratory relief is sought: (1) Section 708 is consistent with the First, Fifth and Fourteenth Amendments; (2) a person suing over "a governmental determination" has the right of "personal service"; (3) governments and their agents are not "persons" and thus are not entitled to invoke the normal rules of service, and in lawsuits against them a plaintiff is entitled to a hearing on the "fact of service" rather than general denials. (Am. Compl., pp. 38-39).

In Count VI, a claim is made for inverse condemnation against all the defendants, but the focus is on the conduct of Snyder, the Township Supervisors and Ebaugh, the Township Secretary.  Snyder's stop work order effectively denied all use of the property by preventing a certificate of occupancy from being valid.  (Am. Compl. 2d ¶ 194).  And when Ebaugh cashed the Docson Consulting check, it indicated the Township's position was a denial of all use.  (*Id.* 2d ¶ 195).  On this count, damages are sought, calculated in part from "imputed and billed costs" of $831,540.98, and treble damages "as the corrupt conspiracy has been at the direction of the insurance carriers."  (Am. Compl., p. 40).

In Count VII, Plaintiffs allege that Snyder, Melanie Brady, and Darrell VanOrmer, her lawyer in the partition action, conspired so that Melanie Brady would breach her divorce/separation agreement with Kenneth Brady by filing the partition action and also tortiously interfere with the contracts dealing with the improvements to the house.  On this count, Plaintiffs seek damages for "Dougherty's billing to Docson Consulting relative to the State Proceeding," along with punitive damages.  (Am. Compl., p. 43).

In Count VIII, Plaintiffs seek a permanent injunction against further enforcement of the PCCA since Gensemer's conduct and the commonwealth court's decision in 317 MD 2008 (the mandamus action Dougherty filed against Gensemer, apparently an attempt to force him to enforce the statute) show that the statute is too vague to enforce.  (Am. Compl., p. 44).  In Count IX, Plaintiffs seek the same relief, on the basis the (unnamed) insurance carriers acted in bad faith in not providing coverage mandated by the PCCA.  (Am. Compl., p. 45).

IV.    *Discussion*

    A.    *Conspiracy and Certain Factual Allegations Are*
         *Deficient as Being Conclusional*

        In our previous memorandum, we advised Dougherty that conclusional factual allegations, including conclusional factual allegations concerning conspiracy, would not be enough to state valid claims and that he had to aver sufficient facts to buttress his factual conclusions.  2011 WL 292236, at *8-9, 14.  However, Plaintiffs have failed to cure this defect in the amended complaint.  They still rely on the same conclusional allegations that cannot be considered under the relevant pleading standard.

        Thus, as we noted in our previous memorandum, we cannot consider a sweeping statement such as Snyder and the Supervisors "join[ed] in a conspiracy" to violate his procedural due process rights so that they could avoid financial liability and so that they could "extort[ ] bribes" and collect "fees a second time," (Am. Compl. ¶ 80), by requiring another permit application.  We likewise must disregard conclusory allegations that the commonwealth court "has a pattern of violating both due process and equal protection" by denying pro se litigants procedural due process while protecting government agencies from default and counseled litigants as well (*id.* ¶ 22), or that the commonwealth court "is part of a corrupt mechanism to interfere with private property interests and the PCCA serves as cover for this corruption." (*Id.* ¶ 146).  Similarly, Plaintiffs' conspiracy allegations remain the same, still lacking in any factual detail.  (Am. Compl. ¶¶ 42, 80, 85, 92, 107, 136, 145, 177, and 196).

        In the amended complaint, Plaintiffs have added new averments, paragraphs 2 through 13, and paragraphs 205, 173, 211-12, and 217, but these also lack sufficient detail in substance and in allegations of conspiracy.  Hence, when

examining the liability of any defendant, we will look only at that defendant's conduct in light of only the well-pleaded allegations of the amended complaint.

> B.  *Plaintiffs Dougherty and Keith Dougherty Insurance and Consulting Lack Standing to Bring a Procedural Due Process Claim, Substantive Due Process Claim, Equal Protection Claim, or a Takings Claim For Conduct of Snyder or the North Hopewell Township Defendants*

Both Snyder and the "North Hopewell Township defendants"[19] move to dismiss the amended complaint on the basis that plaintiff Dougherty lacks standing to assert the claims.  Snyder additionally argues that Keith Dougherty Insurance and Consulting also lacks standing.[20]

We dealt with this issue on the previous motions to dismiss.  As the defendants pointed out then, Melanie Brady and Jean L. Brady own the property, Docson Consulting contracted to make the improvements, and the permit was issued to Kenneth Brady.  The only connection that Dougherty has to the claims is that he is the sole member of Docson Consulting, a limited liability company.  And the only difference from the original complaint is that he has now made Keith Dougherty

---

[19]    The "North Hopewell Township defendants" are: North Hopewell Township; the members of the Township Board of Supervisors, Dustin Grove, William Tollinger, and Robert Barclay; and the Township Secretary/Treasurer, Kerrie Ebaugh.

[20]    The North Hopewell Township defendants also renew the argument that we lack subject-matter jurisdiction over the claims against them under the *Rooker-Feldman* doctrine. We disagree.  As we noted in our previous memorandum, there are four factors that have to be present for the doctrine to apply:

> (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)(quoted case omitted).  The defendants' jurisdictional argument fails on the second requirement because Plaintiff is not complaining about injury caused by a state-court judgment.  Instead, he is complaining about injury caused by these defendants while matters were still at the Township level.

Insurance and Consulting, his sole proprietorship, a plaintiff, but the only connection that entity has to the case is that under the Addendum to the Realty Improvement Investment Agreement if a QEAA was necessary, it would hold proceeds to preserve the tax advantage.  (Doc. 124, Am. Compl., Ex. A, Addendum, sixth paragraph).  We agree that this is not enough to confer standing on Dougherty or his sole proprietorship to assert these constitutional claims against these defendants.  As to Dougherty, they are essentially third-party claims.  *See Stacey v. City of Hermitage*, 178 F. App'x 94, 100 (3d Cir. 2006)(per curiam)(nonprecedential)("prudential standing requires that a litigant assert his own legal interest rather than that of a third party")(cited case omitted).

Plaintiff Dougherty appears to assert he does have standing based on the following.  First, he is an agent for Docson Consulting.  However, agency does not confer standing.  Second, his power of attorney for Jean L. Brady gives him standing.  We reject this argument.  A power of attorney gives him no ownership interest in the property.  Third, he has standing because the Realty Improvement Investment Agreement is really a sales agreement making him as the EAT a purchaser.  We reject this argument because Plaintiff had only contracted to be the EAT, and had not become the EAT before the Board let the permit expire.  Fourth, Plaintiff has a liberty interest in the realty improvement agreement and the building permit and a property interest in the building permit and the residence.  However, everything we have just said above disproves this assertion.

The complaint must therefore be dismissed against  defendant Snyder and the North Hopewell Township defendants on the federal claims of Dougherty and of Keith Dougherty Insurance and Consulting because plaintiff Dougherty lacks standing to bring these claims against them.

C.   *The Statute of Limitations Bars the Federal Claims Against*
*Snyder and the North Hopewell Township Defendants*

In any event, the federal claims are time-barred, which also disposes of the claims of Jean L. Brady and Kenneth Brady.  "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years."  *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).  The statute of limitations is an affirmative defense but may be raised in a motion to dismiss if it is apparent from the face of the complaint.  *McPherson v. United States*, 392 F. App'x 938, 942-43 (3d Cir. 2010)(nonprecedential).

Snyder and the North Hopewell Township Defendants argue that the action against them is barred by the statute of limitations, as we concluded in our previous memorandum.  2011 WL 292236, at *10-11.  Snyder points to the allegations of the complaint showing that any conduct on his part occurred at the latest in 2007, so the complaint was untimely as against him because it was filed on May 19, 2010, more than two years later.  The North Hopewell Township defendants similarly argue that the allegations against them involve conduct occurring no later than 2007.

We agree with Snyder that the action as against him is time-barred.  The last action Snyder took was his unsworn testimony at the November 5, 2007, Board of Supervisors meeting, well in excess of two years before the May 19, 2010, filing of the complaint in this action.  The complaint was thus untimely as to him.  As to the North Hopewell Township defendants, we agree with them that the federal claims, which is based on their conduct through December 2007, are also time-barred as against them.

Plaintiffs appear to make the following arguments against this conclusion.  First, the conspiracy has created a "continuing wrong," (doc. 155, CM/ECF p. 23), so that all claims are timely because the original complaint was filed on May 19, 2010, less than two years after the Township cashed the Docson

Consulting check on May 20, 2010.  Second, the Township's action in not renewing the permit in December 2007 and the state-court decisions denying relief are also continuing wrongs, blocking use of the real estate.  We reject these arguments. Plaintiffs have not adequately pled a conspiracy, and the statute of limitations is calculated from the date of the defendant's conduct (here the conduct of Snyder and the North Hopewell Township defendants), and is not measured by effects.  *See Mumma v. High-Spec, Inc.*, 400 F. App'x 629, 632 (3d Cir. 2010)(nonprecedential).

Snyder and the North Hopewell Township defendants are therefore entitled on limitations grounds to dismissal of the complaint against them for any conduct occurring through December 2007, which encompasses all claims against them.[21]

Based on the foregoing, we need not address Snyder's and the North Hopewell Township's other grounds for dismissal, claim preclusion and their arguments on the merits of the claims.

D.   *The Claim Against Defendant Pamela Lee Is Time-Barred*

Plaintiff's allegations against Pamela Lee, the York County Prothonotary, are that she "expunged" a default Plaintiff Dougherty had entered against Snyder in the mandamus action against Snyder after its remand to common pleas court. (Compl. ¶¶ 119 and 120).  On September 2, 2008, Dougherty filed a mandamus action against Lee in common pleas court to compel her to at least enter the attempt at default.  In that state-court mandamus complaint, Plaintiff alleged that Lee's conduct

---

[21]  The only exception is the retaliation claim based on Treasurer/Secretary Ebaugh's deposit of the stop-work-order check on May 20, 2008, which is timely by one day.  However, Plaintiffs lack standing to pursue that claim as Docson Consulting issued the check, not Dougherty.

occurred on or about February 29, 2008.  (Doc. 7-2, Lee's first Mot. to Dismiss, Ex. 2 ¶ 10, CM/ECF pp. 3-4).

Lee moves to dismiss on the basis of the two-year statute of limitations, pointing out that the filing of the complaint on May 19, 2010, came more than two years after the conduct complained of.  In opposition, Plaintiff makes the same arguments about a continuing wrong that he made against Snyder and the North Hopewell Township defendants.  We rejected Plaintiff's arguments above, so we also rule that the complaint against Lee is time-barred.

E.   *The Motion to Dismiss of Defendants, Judge Stephen Linebaugh; J. Robert Chuk, Court Administrator; and the John Doe Members of the Commonwealth Court*

1.  *Suit Against the Moving Defendants in Their Official Capacities*

a.  *The Eleventh Amendment Bars Suit Against the Moving Defendants in Federal Court  in Their Official Capacities*

The Eleventh Amendment bars suit in federal court against unconsenting states.  *Haybarger v. Lawrence County Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008).[22]  The bar applies regardless of the relief sought.  *Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009).  It also applies to entities that are part of the state.  *See Benn v. First Judicial District*, 426 F.3d 233, 241 (3d Cir. 2005) (Pennsylvania has a unified state judicial system so judicial districts (i.e. common pleas courts), being "an integral component" of the system, have Eleventh Amendment immunity).  *See also Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249,

---

[22]   Pennsylvania has not consented to being sued in federal court.  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 n.5 (3d Cir. 2010)(citing 42 Pa. Con. Stat. Ann. § 8521(b)).  In this regard, Plaintiff's reliance on 42 Pa. Con. Stat. Ann. § 8522(b)(3), whatever the scope of the waiver there, is misplaced, because it does not waive immunity from suit in federal court.

253-54 (3d Cir. 2010)("subsidiary units" of the state have Eleventh Amendment immunity).  Eleventh Amendment immunity also extends to individual state employees sued in their official capacities "because 'official-capacity suits generally represent only another way of pleading an action' against the state."  *Id.* at 254 (quoted case omitted). Thus an associate court administrator sued in her official capacity is entitled to Eleventh Amendment immunity.  *See Ball v. Hartman*, No. 09-844, 2010 WL 146319, at *6 (M.D. Pa. Jan. 11, 2010).  *See also Galvani v. Pennsylvania*, 329 F. App'x 344, 346 (3d Cir. 2009)(per curiam)(nonprecedential)("District Court Administration of York County" was entitled to Eleventh Amendment immunity).

The judicial defendants and Chuk thus move to dismiss the claims against them in their official capacities as barred by the Eleventh Amendment.  Based on the foregoing case law, we agree.  Judge Linebaugh is a member of the York County court of common pleas.  Since suit against him in his official capacity is really against the judicial district, the suit is barred by the Eleventh Amendment.  *See Benn*, *supra*, 426 F.3d at 241 (Pennsylvania judicial districts protected by the Eleventh Amendment).  The same reasoning applies to the John Doe members of the commonwealth court because the commonwealth court is part of the unified judicial system.  *See Haagensen v. Supreme Court of Pennsylvania*, 651 F. Supp. 2d 422, 432 (W.D. Pa. 2009)("The Pennsylvania Supreme Court is a court entity of the Unified Judicial System and as such it is an arm of the state for Eleventh Amendment immunity purposes.").  Sued in his official capacity, Chuk also has Eleventh Amendment immunity.  *See Ball, supra,* 2010 WL 146319, at *6 (M.D. Pa. Jan. 11, 2010)(associate court administrator sued in her official capacity is entitled to Eleventh Amendment immunity).  We will therefore dismiss this action against these defendants in their official capacities.

  b. *The Civil Rights Claims Against These Defendants*
   *In Their Official Capacities Fail on the Merits Because*
   *Defendants Sued In Their Official Capacities Are Not*
   *"Persons" Under Section 1983*

These defendants also move to dismiss the claims against them because they are not "persons" against whom suit can be brought under 42 U.S.C. § 1983 when sued in their official capacities. The defendants cite *Callahan v. City of Philadelphia*, 207 F.3d 668, 673 (3d Cir. 2000), where the Third Circuit held that the "Warrant Division" and the "Eviction Unit" of the First Judicial District, part of the unified judicial system, were not persons within the meaning of section 1983. We agree with defendants' position.

  2. *The Judicial Defendants and Court Administrator Chuk*
   *Are Absolutely Immune From Any Damages Claim*

Judge Linebaugh and the John Doe commonwealth court defendants also move to dismiss the case against them on the basis of absolute judicial immunity. It is a well-established principle that judges are absolutely immune from suit for damages when they act in a judicial capacity. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 12, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978)(internal citation omitted).

  Here, Plaintiffs' claims against the judicial defendants arise solely from their actions in a judicial capacity, resulting from their issuance of court orders in the regular conduct of court business. They are therefore entitled to absolute immunity from any claims for damages.

Court Administrator Chuk also asserts immunity from damages, citing in part, *Ball v. Hartman*, No. 09-844, 2010 WL 146319, at *6-7 (M.D. Pa. Jan. 11, 2010) (associate court administrator entitled to quasi-judicial immunity when acting "as an extension of the court in exercising her responsibilities of case management"). We agree that quasi-judicial immunity extends to defendant Chuk for Plaintiff's damages claim against him as he is only alleged to have assigned the mandamus action against defendant Lee to Judge Linebaugh. *See also Erb v. Sullivan*, No. 09-2123, 2010 WL 4922732, at *4-5 (M.D. Pa. Sept. 10, 2010)(court administrator entitled to quasi-judicial immunity for answering questions regarding the "call of the list"), approved 2010 WL 4919068.

### 3. Claims For Injunctive Relief Against the Judicial Defendants

In at least two appeals to the commonwealth court, No. 1200 CD 2009 and 94 CD 2009, sanctions in the form of attorney's fees and costs were imposed on plaintiff Dougherty. He seeks injunctive relief against the assessment and imposition of these sanctions. We will not grant injunctive relief because, as the moving defendants assert, Dougherty has simply failed to assert any plausible claim for relief against the John Doe defendants. Review of the state-court opinions raise the equally plausible inference that Dougherty was sanctioned for bringing frivolous appeals after failing to comply with court orders or with procedural rules. There is no basis upon which we can grant injunctive relief in these circumstances.[23]

---

[23]   The judicial defendants and Chuk also reassert their claim that we lack jurisdiction under the *Rooker-Feldman* doctrine. Based on our previous memorandum, we disagree. *See* 2011 WL 292236, at *11-12.

F.   *The Motions to Dismiss Count VII of Defendants*
     *Melanie Brady and Darrell VanOrmer*

In Count VII, Plaintiffs allege that Snyder, Melanie Brady, and Darrell VanOrmer, her lawyer in the partition action, conspired so that Melanie Brady would breach her divorce/separation agreement with Kenneth Brady by filing the partition action and also tortiously interfere with the contracts dealing with the improvements to the house.  On this count, Plaintiff's seek damages for "Dougherty's billing to Docson Consulting relative to the State Proceeding," along with punitive damages.  (Am. Compl., p. 43).

Among other arguments, defendant VanOrmer moves to dismiss Count VII for failure to state a claim upon which relief may be granted.  We agree.  Aside from conclusional assertions of wrongdoing and conspiracy, Plaintiffs only allege that VanOrmer represented Melanie Brady in her partition action.  We will therefore grant his motion to dismiss as Plaintiffs failed to allege sufficient facts to make a plausible claim against him.

Defendant Melanie Brady moves to dismiss, in part, because Plaintiffs never effected proper service of the amended complaint on her as they attempted to serve her by handing a copy of the amended complaint to VanOrmer, her attorney in the partition action.  (Doc. 86, return of service on Melanie Brady).  We agree that Brady has never been properly served in accord with Fed. R. Civ. P. 4(c) and (e).  We note that we had previously advised plaintiff Dougherty about rules of service in our memorandums of 2010 WL 2640182 (M.D. Pa. June 30, 2010), and 2010 WL 3168323 (M.D. Pa. July 29, 2010).

In any event, we agree with defendant Brady that Count VII fails to state a claim against her.  First, she is alleged to have conspired with Snyder, the BCO.  However, these allegations are conclusory, (Am. Compl. ¶¶ 92 and 211), and hence

do not support a charge of conspiracy against her.  What we have left is her filing of the partition action on June 6, 2008, and about two years later, on June 8, 2010, her motion for a default judgment in the action, leading to a court order of partition on August 24, 2010.  These actions occurred well after the work-permit proceedings in North Hopewell Township and give rise to an inference, equal if not more so to that of any wrongdoing, that she was merely trying to finally resolve financial interests in the house when it appeared that the improvements were not going forward.  Plaintiffs fail to allege a plausible claim for relief against Melanie Brady in Count VII, and it will be dismissed.

> G.    *The Motion to Dismiss of Ron Englar, Successor to*
> *Michael Gensemer as U.C.C. Field Operations Manager*
> *for the Pennsylvania Department of Labor and Industry*

In Count VIII, Plaintiffs seek a permanent injunction against further enforcement of the PCCA since Gensemer's conduct and the commonwealth court's decision show that the statute is too vague to enforce.  (Am. Compl., p. 44).  In Count IX, Plaintiffs seek the same relief, on the basis that the (unnamed) insurance carriers acted in bad faith in not providing coverage mandated by the PCCA.  (Am. Compl., p. 45).  Englar has been named in the amended complaint as Gensemer's successor. As Englar observes, elsewhere in the amended complaint Plaintiff also appears to be attempting to state a claim for Gensemer's failure to investigate North Hopewell Township.

In part, defendant Englar moves to dismiss on the following grounds.  He first attacks Plaintiff's failure to make proper service of process on him because Dougherty, a party, personally served a (now dismissed) complaint on him and has made no attempt to serve the amended complaint.  (Doc. 85, return of service).  We

agree that service by a party is invalid, as we advised Dougherty in our memorandum of June 30, 2010.  2010 WL 2640182 (M.D. Pa.).

Defendant also argues that the claims lack merit.  Defendant points out, and as we have already noted, the conspiracy allegations are conclusional, so any relief against the Department cannot be based on Gensemer's having conspired with another defendant.[24]  Additionally, he argues that no claim can be based on Gensemer's alleged failure to investigate North Hopewell Township as an individual has no constitutional right to have state officers conduct an investigation.  We agree. *See Fuchs v. Mercer County*, 260 F. App'x 472, 475 (3d Cir. 2008)(per curiam) (nonprecedential) (private citizen has no right to have the police conduct an investigation); *Cramer v. Pruey*, No. 10-796, 2010 WL 4318849, at *4 (M.D. Pa. Oct. 22, 2010)(Caldwell, J.)("a claim for failure to prosecute or to bring charges is not cognizable under 42 U.S.C. § 1983 or any other federal law").

That leaves only Plaintiffs' claim that Englar should be enjoined from enforcing the PCCA because the law is vague.  We agree with Englar that Plaintiffs are not entitled to an injunction against the statute.   First, Plaintiffs allege the law is vague but do not say which provisions are vague.  They appear to base this claim of vagueness on Dougherty's experience with Gensemer,  but as we noted in our order of January 25, 2011, denying  plaintiff Dougherty's previous attempt to add Count VIII, Gensemer is no longer the Chief of the Inspection Division, and his actions would not be a proper basis for a permanent injunction against the statute.  Second, prospective injunctive relief is not appropriate here because any injury is a past injury, and none of

---

[24]     And since this is an official capacity suit, the Eleventh Amendment bars any suit for damages based on Gensemer's conduct.  *See Betts, supra*, 621 F.3d at 254 (Eleventh Amendment immunity also extends to individual state employees sued in their official capacities "because 'official-capacity suits generally represent only another way of pleading an action' against the state." (quoted case omitted).

the plaintiffs allege any threat of being subject to a Township hearing involving a building-permit dispute.  *See Davis v. Thornburgh*, 903 F.2d 212, 220-21 (3d Cir. 1990) (plaintiff lacked standing to challenge procedures under the Pennsylvania Adoption Act when she was not challenging termination of her parental rights so that "she had nothing to gain . . . by establishing that the procedures she [was] challeng[ing] were invalid"); *Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005)(the plaintiff lawyer lacked standing to make a facial constitutional challenge to bar disciplinary rules when the record did not show any threat of future disciplinary proceedings, and plaintiff's challenge to her past disciplinary proceeding was barred by the *Rooker-Feldman* doctrine).

We will therefore grant defendant Englar's motion to dismiss as to all claims.

V.     *Conclusion*

Our analysis leaves no federal claim to litigate.  In the original complaint, almost in passing, plaintiff Dougherty made state-law claims for violations of the Pennsylvania Constitution and Pennsylvania common law, (Original Compl. ¶ 13), but Plaintiff did not allege the state constitutional provisions violated or the common-law actions invoked.  In our memorandum of January 25, 2011, we specifically directed Dougherty to specify in any amended complaint the constitutional provisions and common-law claims relied on if state-law claims were to be made in the amended complaint.  2011 WL 292236 at *14 n.29.  Plaintiffs have failed to specify in the amended complaint their state constitutional and common-law claims.  (Am. Compl. ¶

27).[25]  We will therefore, as we did in our memorandum of January 25, 2011, dismiss any supplemental state-law claims under 28 U.S.C. § 1367(c)(3).

Additionally, we see no need to allow another opportunity to amend.  We had advised plaintiff Dougherty that conclusory factual allegations were not enough and that he had to allege sufficient factual support for his claims.  His response was an amended complaint that was the same as his original one except that he added more conclusional averments.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: May 16, 2011

---

[25]  They did mention state constitutional claims in two of their briefs, (doc. 158 and 164) but briefs are not a pleading.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH DOUGHERTY, et al.,                    :

      Plaintiffs                              :

                                            :

      vs.                                     :        CIVIL NO. 1:CV-10-1071

                                            :

JONATHAN SNYDER, et al.,                    :

      Defendants                              :

*O R D E R*

        AND NOW, this 16th day of May, 2011, in connection with the

defendants' various motions to dismiss the amended complaint (doc. 124), it is

ordered that:

      1.  The motion (doc. 125) to dismiss of defendant
Pamela Lee is granted.

      2.  The motion (doc. 138) to dismiss of defendants,
Judge Stephen Linebaugh, J. Robert Chuk, and the John
Doe members of the Commonwealth Court is granted.

      3.  The motion (doc. 139) to dismiss of defendant
Jonathan Snyder is granted and Plaintiff's cross-motion
(doc. 46) is denied.

      4.  The motion (doc. 132) to dismiss of defendants North
Hopewell Township; Dustin Grove, William Tollinger, and
Robert Barclay, the members of the Township Board of
Supervisors; and Kerrie Ebaugh, the Township
Secretary/Treasurer is granted.

      5.  The motion (doc. 133) to dismiss of Darrell VanOrmer
is granted.

      6.  The motion (doc. 134) to dismiss of Melanie Brady is
granted.

      7.  The motion (doc. 130) to dismiss of Ron Englar is
granted.

8.  The following motions are dismissed as moot: (a) Plaintiff's petition (doc. 51) to amend; (b) Plaintiff's motions (doc. 159 and 166) for reconsideration; (c) Plaintiff's motions (doc. 127 and 168) for partial summary judgment; (d) defendant Snyder's motion (doc. 141) to dismiss Plaintiff's motion (doc. 127) for partial summary judgment; (e) Plaintiff's motion (doc. 178) for partial summary jdugment.

9.  The Court declines under 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction over any state-law claims that might have been presented in the amended complaint.

10.  The stay in this action imposed by order of April 29, 2011 (doc. 180) is vacated.

11.  This action is hereby dismissed, and the Clerk of Court shall close this file.


 /s/William W. Caldwell
William W. Caldwell
United States District Judge

2